**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

         v.

CARLOS JESUS MARGUET-PILLADO,
         *Defendant-Appellant.*

No. 08-50130

D.C. No.
3:06-CR-2505-IEG

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
March 3, 2009—Pasadena, California

Filed March 27, 2009

Before: Alfred T. Goodwin, Ferdinand F. Fernandez, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Fernandez

## COUNSEL

Gregory T. Murphy, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

David P. Curnow and Steve Miller, U.S. Attorney's Office, San Diego, California, for the plaintiff-appellee.

## OPINION

FERNANDEZ, Circuit Judge:

Carlos Jesus Marguet-Pillado (Carlos Marguet) appeals his conviction under 8 U.S.C. § 1326(a) for being a removed alien who was found in the United States. Principally he argues that he is, in fact, a citizen of the United States because he has derivative citizenship and that, in any event, evidence was improperly admitted at trial. We affirm in part, but reverse his conviction.

## BACKGROUND

Carlos Marguet was born in Tijuana, Mexico, on November 4, 1968, to Juana Pillado, a Mexican citizen, and an unknown biological father.[1] Michael L. Marguet (Michael Marguet), a United States citizen, is not Carlos Marguet's biological father and was not married to Carlos Marguet's mother at the time that Carlos Marguet was born. However, Michael Marguet was named as his father on a Mexican birth certificate filed August 22, 1973, and has held out Carlos Marguet as his own son. In November of 1973, an "Application for Status as Permanent Resident" (the Application) was filed with the

---

[1]Some of the facts mentioned in this background discussion are found in the record because they were presented to the district court at various hearings, but, as we will discuss later, those facts were not necessarily presented at trial.

United States Immigration and Naturalization Service. It was technically filed by Carlos Marguet, but, in fact, because Carlos Marguet was a small child, it was actually prepared and signed by Michael Marguet. In an interview with a United States Immigration Examiner, Michael Marguet indicated that he wanted to marry Carlos Marguet's mother and had registered Carlos Marguet as his own child so that both of them could immigrate to the United States and live with Michael Marguet. However, he said, Carlos Marguet "was not his real child." On the date of the interview, Carlos Marguet became a lawful permanent resident.

While in the United States, Carlos Marguet was convicted of second degree burglary and attempted murder, and was released from prison in 2002. In 2006, Carlos Marguet was taken into custody again on an unrelated incident, and was later turned over to the immigration authorities. On September 22, 2006, an Immigration Judge (IJ) ordered Carlos Marguet deported. The IJ rejected the argument that Carlos Marguet had derivative United States citizenship through Michael Marguet.

Carlos Marguet was subsequently indicted for the crime of being a removed alien found in the United States in violation of 8 U.S.C. § 1326(a). He filed a motion to dismiss the Indictment on the ground that it was defective for failure to allege that he knew he was an alien, an element he believed was essential to a § 1326 charge. The district court denied that motion. Then, he filed a second motion to dismiss the Indictment. This time it was on the ground that the underlying deportation proceeding was defective. He made that claim on the basis that the proceeding was "fundamentally unfair" because the IJ applied the wrong law in assessing whether Carlos Marguet could establish derivative citizenship through Michael Marguet. The district court denied that motion also.

At trial, the parties stipulated that Carlos Marguet voluntarily reentered the United States after being removed therefrom,

and that he was thereafter found in California on October 20, 2006. They also stipulated that Carlos Marguet never received the express consent of the Attorney General or of the Secretary of the Department of Homeland Security to reapply for admission.

A bench trial was then held. During the trial, Carlos Marguet objected to the introduction of the Application for the purpose of showing that he was born in Mexico and was a citizen of that country. He asserted that the statements in the Application violated his Constitutional right to confront witnesses against him, and that they were inadmissible hearsay. The district court overruled his objections. At the close of the government's case, Carlos Marguet made a motion for judgment of acquittal and asserted that the government had not proven his alienage beyond a reasonable doubt. The district court denied that motion, found him guilty as charged in the Indictment, and ultimately imposed sentence.

This appeal followed.

JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the district court's denial of the motion to dismiss the Indictment de novo. *See United States v. Camacho-Lopez*, 450 F.3d 928, 929 (9th Cir. 2006). However, we review the district court's factual findings for clear error. *Id.*

We review de novo the district court's determinations of claimed violations of the Confrontation Clause. *See United States v. Hernandez-Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001). Moreover, we review de novo the district court's construction of hearsay rules, but review for abuse of discretion the court's determination to admit hearsay evidence. *See id.* If we determine that the district court committed a nonconsti-

tutional error, we will reverse if it is more likely than not that the error affected the verdict. *See United States v. Chu Kong Yin*, 935 F.2d 990, 994 (9th Cir. 1991).

We review de novo the district court's denial of a motion for acquittal. *See United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002). In reviewing a challenge to the sufficiency of the evidence, we will uphold the conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 641-42.

## DISCUSSION

While Carlos Marguet raises a number of claims, his principal claim relies upon his assertion that he is a United States citizen. He argues that, despite the fact that he is not related to Michael Marguet by blood, he is nonetheless entitled to derivative citizenship through Michael Marguet. We will, therefore, take up that question first.

### I.   Derivative Citizenship

It is a commonplace that the traditional ways of transmitting and acquiring citizenship at birth are *jus soli* and *jus sanguinis*. In this country, the former is provided for by the Constitution,[2] and the latter is provided for by the enactments of Congress.[3] It would be a bit surprising to discover that over the decades Congress had selected a method that relied on neither concept, but, rather, was content to have United States citizenship acquired at birth by a person born out of wedlock, who was not born on United States soil and who, at the time,

---

[2]U.S. Const. amend. XIV § 1.

[3]*See Miller v. Albright*, 523 U.S. 420, 424, 118 S. Ct. 1428, 1432, 140 L. Ed. 2d 575 (1998).

did not have a natural parent who was a United States citizen. As it is, there is no cause for surprise.

**[1]** Certainly, we know that as statutory law has stood since 1986 an actual blood relationship between at least one United States parent and the child is explicitly required. The applicable statutory section reads as follows as far as a father is concerned:

> The provisions of paragraphs (c), (d), (e), and (g) of section 1401 of this title . . . shall apply as of the date of birth to a person born out of wedlock if —
>
>> (1) a blood relationship between the person and the father is established by clear and convincing evidence,
>>
>> (2) the father had the nationality of the United States at the time of the person's birth,
>>
>> (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and
>>
>> (4) While the person is under the age of 18 years —
>>
>>> (A) the person is legitimated . . . ,
>>>
>>> (B) the father acknowledges paternity of the person . . . , or
>>>
>>> (C) the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a) (1986).**⁴** However, when Carlos Marguet was born in 1968, the statute read somewhat differently: It did not specifically mention a blood relationship on its face. It provided:

> The provisions of paragraphs (3) to (5), and (7) of section 1401(a) . . . of this title shall apply as of the date of birth to a child born out of wedlock on or after the effective date of this chapter, if the paternity of such child is established while such child is under the age of twenty-one years by legitimation.

8 U.S.C. § 1409(a) (1952). That is the section that we must apply to Carlos Marguet's claim,**⁵** and he asserts that its failure to specifically mention a blood relationship necessarily means that none was required, so that children born out of wedlock can be dubbed United States citizens even though neither natural parent was a citizen. In that he errs.

**[2]** In *Miller*, a majority of the justices indicated an understanding that our traditions, and the 1952 version of the statute, look to a blood (biological) relationship between the alleged father and the child at birth. Justice Stevens, speaking for himself and for Chief Justice Rehnquist, put it this way: "As originally enacted in 1952, § 1409(a) required simply that 'the paternity of such child [born out of wedlock] is established while such child is under the age of twenty-one years by legitimation.' . . . The section offered no other means of proving a biological relationship." *Miller*, 523 U.S. at 435, 118 S. Ct. at 1437 (citation omitted). He also noted the importance of that relationship. As he said: "There is no doubt that

---

**⁴**The details of the law are different where the child's mother is a United States citizen. *See* 8 U.S.C. § 1409(c) (1986). That does not concern us here.

**⁵***See Ablang v. Reno*, 52 F.3d 801, 803 (9th Cir. 1995); *Runnett v. Shultz*, 901 F.2d 782, 783 (9th Cir. 1990); *see also Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005).

ensuring reliable proof of a biological relationship between the potential citizen and its citizen parent is an important governmental objective." *Id.* at 436, 118 S. Ct. at 1438. And Justice Breyer, speaking for himself and Justices Souter and Ginsburg, in commenting on the whole historical range of statutes, stated that: "American statutory law has consistently recognized the rights of American parents to transmit their citizenship to their children." *Id.* at 477, 118 S. Ct. at 1458 (Breyer, J., dissenting) (citations omitted). He went on to note that "ever since the Civil War, the transmission of American citizenship from parent to child, *jus sanguinis*, has played a role secondary to that of the transmission of a citizenship by birthplace, *jus soli*." *Id.* at 478, 118 S. Ct. at 1459 (citations omitted). As we see it, the Justices' understanding of the nature of our law merely bespoke what no doubt seemed apparent to everyone at that time and before.

A focus on the form of the 1952 statute underscores the correctness of that understanding. While Carlos Marguet would have us look at § 1409(a) in isolation and, thus, declare that "paternity" of a child born out of wedlock does not encompass a biological relationship, to do so would ignore the context of the statute. The section itself refers to applying paragraphs (3), (4), (5) and (7) of 8 U.S.C. § 1401(a)[6] when reaching a decision. But each of those sections refers to a child "born . . . of" parents at least one of whom is a United States citizen. There can be little doubt that the "born of" concept generally refers to a blood relationship. In fact we said as much in *United States v. Flores-Villar*, 536 F.3d 990 (9th Cir. 2008). In that case, Flores was born out of wedlock to a United States citizen father and a Mexican citizen mother on October 7, 1974. *Id.* at 994. We referred to the 1952 version of the statute in question here, and noticed its reference to "paternity"[7] and to the requirement that a person be "born . . .

---

[6]Paragraphs (3), (4), (5) and (7) appear in the current version of § 1401 as paragraphs (c) (d) (e) and (g) respectively.

[7]*Id.* at 995.

of"[8] a United States citizen, and then observed that the law applied if "a United States citizen father had a child out of wedlock . . . ."[9] It is difficult to see how a man could "have" a child "out of wedlock" if he was not that child's biological father.

[3] We recognize that we have held that when a child is born during a marriage and at least one parent is a United States citizen, a blood relationship is not absolutely required. *See Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000); *see also Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1093 (9th Cir. 2005) (so indicating, but, in fact, there was a blood relationship with the citizen father). That erosion of a biological nexus is, of course, itself a reflection of the tradition that a man is considered to be the natural father of a child born during wedlock. In any event, the erosion does not help Carlos Marguet because he was not only born out of wedlock, but also born years before Michael Marguet married Carlos Marguet's noncitizen mother, that is, Carlos Marguet surely could not have become a citizen at his birth. *See Marquez-Marquez v. Gonzales*, 455 F.3d 548, 559 (5th Cir. 2006). In other words, the 1952 version still required a biological relationship as far as Carlos Marguet is concerned.

Nor do earlier iterations of the law which was to be applied when a child was born out of wedlock suggest that our reading of the 1952 enactment is incorrect. For example, the provisions of the 1940 Act were much the same as the 1952 provisions,[10] and in referring to the former act we said that "an illegitimate child cannot claim citizenship via *jus sanguinis* until her parentage is established."[11] And the provisions of

---

[8]*Id.* at 994.

[9]*Id.* at 995.

[10]*See Ablang*, 52 F.3d at 803; *Runnett*, 901 F.2d at 783 n.1.

[11]*Ablang*, 52 F.3d at 805. We added: "[T]he Government naturally requires proof of paternity before determining someone to be the legal father." *Id.*

prior acts were not treated any differently in that respect. *See, e.g.*, *Weedin v. Chin Bow*, 274 U.S. 657, 661-675, 47 S. Ct. 772, 773-778, 71 L. Ed. 1284 (1927) (considering Acts of 1790, 1795 and 1798); *Wauchope v. United States Dept. of State*, 985 F.2d 1407, 1410 (9th Cir. 1993) (considering 1934 Act).

**[4]** In short, we find no authority for holding that a child who was born out of wedlock, neither of whose natural parents was a United States citizen at the time of his birth, nevertheless acquired derivative citizenship at birth because of some later action by a United States citizen. Indeed, it would seem surd to say that a child born in wedlock must have a United States citizen parent at birth, but a child born outside of wedlock need not.

**[5]** Thus, Carlos Marguet was not entitled to derivative citizenship because he did not have a blood relationship to Michael Marguet.

II.   The Indictment

Carlos Marguet also appeals the district court's refusal to dismiss the Indictment because, he says, he was improperly removed in the first place and the Indictment did not plead that he had knowledge that he was an alien. Both of those arguments must fail.

As to the first, in order to collaterally attack the removal order upon which the Indictment must ultimately rest,[12] he must show that he exhausted his administrative remedies, was deprived of the opportunity for judicial review, and was subjected to a fundamentally unfair order.[13] The parties dispute

---

[12]8 U.S.C. § 1326(a).

[13]8 U.S.C. § 1326(d); *United States v. Becerril-Lopez*, 541 F.3d 881, 885 (9th Cir. 2008); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004).

whether he did exhaust his administrative remedies, and whether he was denied the right to judicial review. Given the valetudinarian nature of the information regarding appeal rights appearing in the administrative record, we are not entirely convinced that he made a considered and intelligent waiver of his appeal rights. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839-40, 107 S. Ct. 2148, 2156, 95 L. Ed. 2d 772 (1987); *Ubaldo-Figueroa*, 364 F.3d at 1048-49; *United States v. Pallares-Galan*, 359 F.3d 1088, 1096-97 (9th Cir. 2004). However, we need not resolve that waiver issue. In any event, Carlos Marguet cannot show that the proceeding was fundamentally unfair because his argument is based upon his claim that the IJ erred in finding a need for a blood relationship between him and Michael Marguet. *See United States v. Gonzalez-Valerio*, 342 F.3d 1051 (9th Cir. 2003). As we have demonstrated above, there was no legal error in that regard. *See also Martinez-Madera v. Holder*, No. 06-73157, slip op. 3357, 3360 (9th Cir. Mar. 16, 2009).

Carlos Marguet's second attack on the Indictment fares no better. He asserts that in a prosecution under 8 U.S.C. § 1326(a), the government must plead and prove that the defendant had knowledge that he was an alien when he reentered the country. As he concedes, however, we have already held to the contrary. *See Flores-Villar*, 536 F.3d at 999; *see also United States v. Rivera-Sillas*, 417 F.3d 1014, 1020 (9th Cir. 2005).

## III.   Evidence of Mexican Citizenship

In an attempt to prove that Carlos Marguet was not a citizen of the United States, the government submitted the Application from his immigration file (A-file) in which he applied for permanent resident status on the basis of his relationship to Michael Marguet. But Carlos Marguet was just a five-year-old boy at that time and, in fact, the document was filled out and signed by Michael Marguet. In it Michael Marguet

declared that Carlos Marguet was born in Mexico and was a citizen of that country.

At trial, Carlos Marguet objected to the admission of the document on the basis that it violated his confrontation rights under the Constitution,[14] and that it should have been excluded in any event because it was hearsay.

## A.   *Confrontation Rights*

**[6]** Carlos Marguet relies upon *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) for his claim that his confrontation rights were violated. In *Crawford*, *id.* at 68, 124 S. Ct. at 1374, the Court determined that when an out of court testimonial statement is offered against a defendant at trial, the Sixth Amendment requires that he be given the opportunity to confront and cross-examine the person who made that statement. The only exception is when the witness is not available and there was a prior opportunity for cross-examination. *Id.* On the other hand, when the evidence in question is nontestimonial, confrontation is not necessarily required. *Id.* The Court did not undertake "to spell out a comprehensive definition of 'testimonial,' " although it did note that police interrogations and testimony before a grand jury, or at a preliminary hearing, or at trial would be within that category. *Id.*

**[7]** We have been required to fill the gap and have declared that a "warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter." *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005). Similarly, a notation on the warrant that the alien was removed was not testimonial. *Id.* And we have agreed that " '*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony

---

[14]U.S. Const. amend. VI.

is the declarant's awareness or expectation that his or her statements may later be used at a trial.' " *United States v. Larson*, 460 F.3d 1200, 1213 (9th Cir. 2006) (citation omitted).[15]

**[8]** In the case at hand, we follow those guideposts and determine that the Application was not testimonial. It was merely a statement of facts designed to have the government agree to receive Carlos Marguet as a permanent resident — in other words, it was just the setting out of what Michael Marguet saw as noncontroversial factual information regarding Carlos Marguet. It surely was not set forth with an eye to a trial proceeding of any kind. As it was, no criminal proceeding commenced until more than thirty years later. By then Carlos Marguet had resided in the United States for a long time, committed crimes, been removed, and then returned. Surely none of that was in Michael Marguet's contemplation when he sought to have a little boy admitted into the United States.

**[9]** There was no violation of the Constitution when the Application was admitted into evidence.

B. *Evidentiary Error*

Carlos Marguet also asserts that the district court erred when it admitted the Application, which was in his A-file, under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8). We agree.

**[10]** No doubt the Application can be said to document the activities of a governmental agency and to document the observations of a responsible government officer to some extent. That would allow admission of the document for those

---

[15]This opinion was vacated when the case was taken en banc. *United States v. Larson*, 471 F.3d 1359 (9th Cir. 2006). However, the portion cited here was then adopted in the en banc opinion. *United States v. Larson*, 495 F.3d 1094, 1099 n.4 (9th Cir. 2007) (en banc).

purposes. *See Bahena-Cardenas*, 411 F.3d at 1074-75; *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1317-18 (9th Cir. 1997). However, the only part of the document truly relevant here is Michael Marguet's hearsay statement that Carlos Marguet was born in and was a citizen of Mexico. Michael Marguet, of course, had no governmental duties whatsoever. *See Chu Kong Yin*, 935 F.2d at 999. The government's contention that the Application is admissible under the business records exception contains the same flaw. *See* Fed. R. Evid. 803(6); *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999). In either case, there is at least one more layer of hearsay, and to be admissible there must be an exception for that layer also. *See Sana*, 181 F.3d at 1045; *United States v. Hajda*, 135 F.3d 439, 444 (7th Cir. 1998).

**[11]** However, the government made no attempt in the district court and made no attempt in its brief to argue that the statements of Michael Marguet are admissible as a result of some other hearsay exception. Thus, the government has waived any argument to that effect, and we are constrained to find error in the admission of the statements of Michael Marguet. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996).

**[12]** Moreover, the error was prejudicial. That is, it is more likely than not that the error affected the verdict. *See Chu Kong Yin*, 935 F.2d at 994. There can be little doubt of that. In fact, aside from the documents reflecting the previous administrative proceedings for Carlos Marguet and his removal, the Application was the only evidence admitted at trial which tended to show Carlos Marguet's alienage. But we have made it quite clear that the removal documents alone will not suffice to prove alienage beyond a reasonable doubt. *See United States v. Sotelo*, 109 F.3d 1446, 1449 (9th Cir. 1997); *see also United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005). In other words, on the trial record, absent

the improperly admitted hearsay, Carlos Marguet would not have suffered a conviction.[16]

**[13]** Thus, we must reverse and remand for further proceedings.

## CONCLUSION

Carlos Marguet became a legal permanent resident at an early age, but when he grew up he engaged in a course of criminal activity that ultimately resulted in his removal to Mexico. He returned, was prosecuted, and asserted that he was a United States citizen. As we have explained, he does not have derivative citizenship because his stepfather, Michael Marguet, is not related to him by blood, and was not even married to Carlos Marguet's mother at the time of Carlos Marguet's birth.

However, in order to convict him, the government did have to prove that Carlos Marguet was not a United States citizen, even if it did not have to prove his knowledge of that fact. And, while evidence outside of the trial record — some submitted by Carlos Marguet himself — strongly points to the conclusion that he was born in and was a citizen of Mexico, the evidence admitted at the trial itself established those "facts" through the use of improperly admitted hearsay. Whether Carlos Marguet's approach to this case so obnebulated the proceedings that the government was not sufficiently prepared, or whether some other consideration

---

[16]To the extent that Carlos Marguet contends that the reversal should be one for insufficiency of the evidence, we do not agree. In assessing that question, we consider all of the evidence, including that which was improperly admitted. *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1009 (9th Cir. 1995); *see also United States v. McKoy*, 771 F.2d 1207, 1215 (9th Cir. 1985). Here, the sum total of the evidence would suffice to enable a rational trier of fact to find that Carlos Marguet was guilty beyond a reasonable doubt. *See Carranza*, 289 F.3d at 641-42.

accounts for the result, is not for us to say. The fact remains that the conviction cannot stand.

REVERSED and REMANDED for further proceedings.