# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

CARLOS JESUS MARGUET-PILLADO,
          *Defendant-Appellant.*

No. 10-50041

D.C. No.
3:06-CR-02505-
IEG-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, District Judge, Presiding

Argued and Submitted
June 6, 2011—Pasadena, California

Filed August 12, 2011

Before: Betty B. Fletcher and N. Randy Smith,
Circuit Judges, and James S. Gwin, District Judge.*

Opinion by Judge Gwin;
Dissent by Judge N.R. Smith

*The Honorable James S. Gwin, District Judge for the U.S. District Court for Northern Ohio, Cleveland, sitting by designation.

## COUNSEL

Laura Duffy, Bruce R. Castetter, and Steve Miller, Office of the United States Attorney, for the plaintiff-appellee.

Gregory Thomas Murphy, Janet Tung, Vincent James Brun-
kow, and Devin Burstein, Federal Defenders of San Diego,
Inc., for the defendant-appellant.

## OPINION

GWIN, District Judge:

Defendant-Appellant Carlos Marguet-Pillado ("Marguet-
Pillado") appeals his conviction for being a previously-
removed alien found in the United States, in violation of 8
U.S.C. § 1326. With his appeal, Marguet-Pillado argues that
the district court erred in refusing to give a requested jury
instruction. The instruction would have permitted Marguet-
Pillado to argue that the government had failed to establish
that Marguet-Pillado was an alien who had not obtained
derivative citizenship from his step-father, a United States cit-
izen listed on Marguet-Pillado's birth certificate as his father.
The district court rejected the instruction after finding that an
earlier appeal in this case relieved the government of the bur-
den of establishing alienage in the second trial. Because we
find that in the second trial, Marguet-Pillado could require the
government to come forward with proof that Marguet-Pillado
was an alien and did not have derivative citizenship, we
REVERSE Marguet-Pillado's conviction and remand this
case for a new trial.

## I.   Background

Defendant-Appellant Carlos Marguet-Pillado was born in
Tijuana, Mexico, in 1968 to Juana Pillado, a Mexican citizen,
and an unknown biological father. Marguet-Pillado's birth
certificate, obtained in 1973, lists United States citizen
Michael Marguet as his father. The parties do not contest,
however, that Michael Marguet was Defendant-Appellant
Marguet-Pillado's step-father, not his biological father. In

1973, Defendant-Appellant Marguet-Pillado and his mother entered the United States; his mother entered on a K-1 fiancée visa and the Defendant-Appellant entered on a K-2 visa. In late 1973, in Marguet-Pillado's "Application for Status as Permanent Resident," Michael Marguet listed Marguet-Pillado as his son, although he disclosed to the Immigration Examiner that he and Marguet-Pillado were not biologically related. In January 1974, Defendant-Appellant Marguet-Pillado became a lawful permanent resident and continued to reside in the United States. *United States v. Marguet-Pillado (Marguet I)*, 560 F.3d 1078, 1080 (9th Cir. 2009).

In 1994, Marguet-Pillado was convicted of second-degree burglary, in violation of California Penal Code Section 459, and he was sentenced to two years' imprisonment. Approximately eighteen months later, in September 1995, he was convicted of attempted murder with a firearm, in violation of California Penal Code Sections 187, 664, and 12022.5(a), for which he received an eight-year prison term. He was released from prison in 2002.

On September 22, 2006, Marguet-Pillado was removed from the United States. During his removal proceedings, Marguet-Pillado claimed that he had acquired derivative United States citizenship from his step-father. The presiding immigration judge rejected this argument and ordered that Marguet-Pillado be removed from the United States. Shortly thereafter, Marguet-Pillado returned to the United States without inspection. On October 20, 2006 he was arrested on an outstanding warrant in Chula Vista, California.

On November 28, 2006, Marguet-Pillado was indicted on one count of being a removed alien found in the United States, in violation of 8 U.S.C. § 1326(a) and (b). Marguet-Pillado filed two motions to dismiss the indictment. The first argued that the indictment was defective for failing to allege that Marguet-Pillado knew he was an alien. The second asserted that his removal had been defective due to the immi-

gration judge's application of the wrong legal standard in assessing Marguet-Pillado's claim of derivative citizenship. Both motions were denied. *See Marguet I*, 560 F.3d at 1080-81.

Marguet-Pillado filed a waiver of jury trial and was tried by the district judge. For that non-jury trial, the government and Marguet-Pillado stipulated that he had been removed on September 22, 2006, after an immigration judge rejected his claim of derivative citizenship, and that he had reentered the United States without express consent. At the conclusion of the bench trial, the district court found Marguet-Pillado guilty and sentenced him to fifty-one months' imprisonment followed by a three-year term of supervised release.

Marguet-Pillado appealed his conviction, arguing that the acquisition of derivative citizenship did not require a biological relationship to a United States citizen parent and that the district court erred in admitting certain hearsay evidence. A panel of this Court reversed the conviction due to the admission of inadmissible hearsay evidence. *Marguet I*, 560 F.3d at 1087. However, the panel rejected Marguet-Pillado's derivative citizenship argument, holding that an individual cannot obtain derivative citizenship from a non-biological parent. *Id.* at 1084.

On remand, Marguet-Pillado elected to be tried by jury. For the second trial, Marguet-Pillado made no factual stipulations. Throughout pre-trial proceedings, the government maintained that Marguet-Pillado should be precluded from arguing or suggesting that he was a United States citizen. For example, on August 14, 2009, at the first substantive hearing after remand, the government stated that it wanted to preclude any argument or reference to whether Marguet-Pillado had obtained derivative citizenship through his step-father. Marguet-Pillado's defense counsel replied that Marguet-Pillado would not be entitled to an instruction on his previously rejected theory of derivative citizenship, but stated that

the defense planned on arguing at trial that the government had not proven alienage beyond a reasonable doubt, saying: "obviously, I'm not going to mislead the court or the jury . . . [however] . . . I think the Ninth Circuit has instructed us we're entitled to challenge the quality of the government's evidence . . . I'm not going to argue that our now-rejected legal theory should be the law[, but] I think we're entitled to say that the government hasn't met its burden with respect to an element of the crime."

In its trial brief, the government similarly stated that should Marguet-Pillado raise the possibility of derivative citizenship, "the government will ask this court to take judicial notice of its own docket and appellate authority establishing [that] the basis of his derivative citizenship claim was foreclosed by prior court rulings." On that issue, prior to trial the government filed a formal motion *in limine* "to exclude any reference to any claim of derivative citizenship," arguing that "[s]ince this court and the Ninth Circuit . . . held that defendant's derivative citizenship was legally insufficient, defendant should be precluded from offering any evidence asserting derivative citizenship before the jury." The district court granted the motion, finding that the material was not relevant because the Ninth Circuit already ruled that Marguet-Pillado could not claim derivative citizenship based upon his relationship to Michael Marguet, his step-father.

Most directly relevant to this appeal, Marguet-Pillado argues that the district court incorrectly rejected a proposed jury instruction on the alienage element of 8 U.S.C. § 1326(a). In the instructions, the district court defined an "alien" as "a person who is not a natural-born or naturalized citizen or national of the United States." On November 3, 2009, Marguet-Pillado requested that the district court give the following supplemental instruction on the alienage element of the crime:

> A person is a natural-born United States citizen if that person was born in the United States. A person

born outside the United States is also a natural-born citizen of the United States if, before the person's birth, one biological United States citizen parent of that person was physically present in the United States for ten years, at least five of which were after the citizen parent reached the age of fourteen.

The government argued that this Court's earlier opinion precluded Marguet-Pillado from arguing to the jury that he might be a citizen and that he was, therefore, not entitled to the proposed supplemental instruction.

On his part, Marguet-Pillado made two related arguments in support of the instruction. First, he argued that this instruction merely required that the government prove that he was an alien—that is, it simply allocated the burden of proof to the correct party. Second, he argued that the law of the case doctrine did not apply because a criminal defendant is entitled to have the jury decide whether the government proved all of the elements of the offense beyond a reasonable doubt. Marguet-Pillado argued that the question of whether there was a biological relationship between him and Michael Marguet was one for the jury. In effect, Marguet-Pillado claimed that the government was asking for a directed verdict with regard to an element of the offense—that the government had already established his alienage—and that directed verdicts in favor of the government could not be given in criminal cases.

The district court rejected Marguet-Pillado's arguments, largely on the grounds that the law of the case doctrine precluded an instruction about derivative citizenship.

The trial commenced on November 4, 2009, and the jury returned a guilty verdict on the next day. On January 25, 2010, the district court sentenced Marguet-Pillado to fifty-one months' imprisonment, followed by a three-year term of supervised release. On January 28, 2010, Marguet-Pillado filed his notice of appeal. In the current appeal, Marguet-

Pillado principally argues that the district court erred in refusing to give the jury his requested instruction, which explained when an individual is a natural-born United States citizen through derivative citizenship.

## II.  Standard of Review

"A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case," *United States v. Johnson*, 459 F.3d 990, 993 (9th Cir. 2006), provided that the requested instruction "is supported by law and has some foundation in the evidence," *United States v. Bello-Bahena*, 411 F.3d 1083, 1088-89 (9th Cir. 2005) (citation omitted). Whether an instruction "is supported by law" is reviewed *de novo*. *See United States v. Castagana*, 604 F.3d 1160, 1163 n.2 (9th Cir. 2010). Whether it "has some foundation in the evidence" is reviewed for an abuse of discretion. *See United States v. Daane*, 475 F.3d 1114, 1119 (9th Cir. 2007); *Bello-Bahena*, 411 F.3d at 1089. The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence "warrants per se reversal," *Bello-Bahena*, 411 F.3d at 1091 n.6, unless "other instructions, in their entirety, adequately cover that defense theory," *United States v. Thomas*, 612 F.3d 1107, 1120 (9th Cir. 2010) (citation and quotation marks omitted).

The district court had jurisdiction over this action under 18 U.S.C. § 3231. We have jurisdiction over the appeal under 28 U.S.C. § 1291. We now reverse, finding that the district court erred when it rejected Marguet-Pillado's proposed jury instruction.

## III.  Analysis

**[1]** The Court must decide whether the district court erred in rejecting Marguet-Pillado's instruction regarding derivative citizenship. As previously noted, a criminal defendant has the right to have the jury instructed according to his theory of the

case so long as that instruction is (1) supported by the law and (2) has some foundation in the evidence. *Bello-Bahena*, 411 F.3d at 1088-89.

**[2]** No one disputes that Marguet-Pillado's requested instruction was "an accurate statement of the law," in that it correctly stated the two circumstances in which an individual born in 1968 is a natural-born United States citizen: (1) that the person was born in the United States or (2) born outside the United States to a biologically-related United States citizen parent who met certain residency requirements. Nonetheless, the government asserts that the requested instruction "was not supported by the law" because "[t]he issue of Marguet-Pillado's claim of derivative citizenship was decided as a matter of law" in *Marguet I.*

The district court accepted this argument and grounded its decision in the notion that the requested instruction was precluded by the law of the case doctrine.[1] Because Marguet-Pillado's claim of derivative citizenship was definitively decided in *Marguet I*, the district court believed that the jury could not find there was a reasonable doubt as to Marguet-Pillado's alienage based on his relationship to Michael Marguet, and therefore, that the court could not give an instruction facilitating that conclusion. In other words, the district court seemed to think that the jury could not reach a conclusion that conflicted with the law of the case.

**[3]** We are mindful of the difficult position that the district court was in when deciding whether to issue instructions related to derivative citizenship in light of our decision in *Marguet I.* Nonetheless, the district court erred when it ruled

---

[1]The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Tahoe-Sierra Preserv. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 786-87 (9th Cir. 2000).

that the requested instruction was precluded as a matter of law. Section 1326(a) punishes "any alien who . . . (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States" without permission from the government. "It is well-established that, by the statute's plain terms, alienage is a core element of the § 1326 offense." *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 722 (9th Cir. 2011) (citations omitted). "As such, the government must prove alienage beyond a reasonable doubt, and a defendant is entitled to have the jury determine that question at trial." *Id.* (citations and quotation marks omitted); *see also United States v. Smith-Baltiher*, 424 F.3d 913, 921 (9th Cir. 2005).

**[4]** Reliance upon the law of the case doctrine in this context was mistaken. The use of such a doctrine potentially leads to a number of unconstitutional results, including violating Marguet-Pillado's right to confront witnesses and his right to have a jury decide whether the government has proven the elements of a crime beyond a reasonable doubt. Although there is no clear precedent in this Circuit as to the applicability of the law of the case doctrine in the criminal context, we previously held that offensive collateral estoppel could not be used to prove facts or elements against a criminal defendant. Indeed, "[i]n federal criminal trials, the United States may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the government bears the burden of proof beyond a reasonable doubt." *United States v. Arnett*, 353 F.3d 765, 766 (9th Cir. 2003) (en banc) (per curiam); *Smith-Baltiher*, 424 F.3d at 920.

**[5]** Although the context is slightly different, the logic of *Smith-Baltiher* and *Arnett* also applies to the current case. *See also United States v. Gallardo-Mendez*, 150 F.3d 1240, 1244 (10th Cir. 1998) ("[W]hile 'wise public policy and judicial

efficiency' may be sufficient reasons to apply collateral estoppel in civil cases, they do not have the same weight and value in criminal cases.") (citation omitted); *United States v. Pelullo*, 14 F.3d 881, 897 (3d Cir. 1994) (holding that defendant's prior conviction following jury trial for wire fraud did not prevent re-litigation of the same crime as predicate offense in later RICO trial); *United States v. Harnage*, 976 F.2d 633, 636 (11th Cir. 1992) (rejecting the use of collateral estoppel against criminal defendants). The law of the case doctrine cannot constitutionally be applied to bar the use of a defendant's proposed jury instruction where that instruction is legally correct and supported by a foundation in the evidence, particularly where that instruction is intended to hold the government to its burden of proof on an element of a crime. To do so in that circumstance would practically act as an impermissible directed verdict on an element of the offense. *See Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (stating that law of the case should not be applied where it would create a "manifest injustice"), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). Further, and aside from the constitutional question, the law of the case cannot validly be applied where "substantially different evidence was adduced at a subsequent trial." *Id*. That exception to the law of the case doctrine applies here because the evidence admitted on the issue of alienage at the second trial was different than at the first.[2]

---

[2]Additionally, although the district court did not squarely hold this, it seems that it believed derivative citizenship was an affirmative defense for which Marguet-Pillado had to show prima facie eligibility before receiving the requested instruction (and that Marguet-Pillado was precluded from making that showing because of the decision in *Marguet I*). As our recent decision in *Sandoval-Gonzalez* made clear, any instruction requiring that a criminal defendant prove his citizenship as an affirmative defense is in error. 642 F.3d at 722-23 ("Lest there by any further doubt, we now clarify that a criminal defendant faces no burden whatsoever regarding the issue of derivative citizenship in a prosecution for an offense of which alienage is an element.").

**[6]** Because Marguet-Pillado's proposed instruction was supported by the law, the district court was required to give that instruction to the jury so long as it had "some foundation in the evidence." *Bello-Bahena*, 411 F.3d at 1088-89. The jury received evidence that Michael Marguet was listed on Marguet-Pillado's birth certificate as his father, that Michael Marguet was a United States citizen, that Michael Marguet had lived and worked in the United States for some time prior to Marguet-Pillado's birth, and that Marguet-Pillado was born near the United States border. This evidence is sufficient to establish a foundation in the evidence that Marguet-Pillado was not an alien because he had derived citizenship. *See Bello-Bahena*, 411 F.3d at 1091 ("[A] defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility." (quoting *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987) (alteration in original))).

**[7]** Indeed, we reached the conclusion that Marguet-Pillado was an alien in the first appeal because Marguet-Pillado admitted that Michael Marguet was not his biological father on his appeal. Appellant's Opening Brief, *Marguet I*, 2008 WL 6796023 (Sept. 10, 2008). On the basis of those facts, *Marguet I* held that Marguet-Pillado was not entitled to derivative citizenship. But that earlier guilty verdict has been vacated and, as Marguet-Pillado argued to the district court, he did not stipulate to the lack of a biological relationship in the second trial. *See also United States v. James*, 987 F.2d 648, 651 (9th Cir. 1993) (stipulation as to element of crime could not be taken into account when it was "never entered into evidence or read to the jury"). Indeed, in *Marguet I*, where Marguet-Pillado presented a legal argument for his theory of derivative citizenship, it made some tactical sense for him to admit the lack of biological relationship on his appeal. That admission, however, should not preclude Marguet-Pillado from holding the government to its burden of proof on each element of the offense in a later trial. Given the evidence

in the record indicating that Marguet-Pillado may have been a derivative citizen and the lack of contrary evidence admitted at trial, we find that the district court abused its discretion in deciding that the proposed instruction had no foundation in the evidence. *See United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

Fundamentally, the result of accepting the government's argument would be to impair Marguet-Pillado's right to have the *jury* decide whether the government has proven all of the elements of the crime, including that he is, in fact, an alien. Of course, the jury should be instructed as to the proper law regarding derivative citizenship, but the determination the government has proven that he is not a derivative citizen— including whether he has a biological relationship to Michael Marguet—is ultimately a factual question that only the jury can decide. *See United States v. Meza-Soria*, 935 F.2d 166, 169 (9th Cir. 1991) ("If, as we have stated, alienage is an element of the crime, then it is an ineluctable conclusion that the government must prove that element beyond a reasonable doubt—due process demands no less."); *United States v. Jones*, 248 F.3d 671, 675 (7th Cir. 2001) ("In all criminal cases, the government must prove each element, even those that the defendant does not specifically contest, beyond a reasonable doubt to convict a defendant." (citation omitted)).[3]

---

[3]The appeal in *Marguet I* makes for a somewhat more complicated inquiry in this case and likely resulted in the district court's confusion. However, analogizing to a more familiar context makes the district court's error more clear. For example, in felon-in-possession cases under 18 U.S.C. § 922, often the fact that the defendant was previously convicted of a felony is known as a factual matter (in the colloquial sense) to the parties, the lawyers, and the court. Nonetheless, the government still must carry its burden of proving to the jury that the defendant was in fact previously convicted of a felony. In disputing this element, the defendant may not present false information (such as flatly denying the previous conviction if he took the stand), but he would be permitted to argue to the jury that the government has failed to prove beyond a reasonable doubt that he was convicted of the previous offense.

**[8]** We also now find that the district court's error in rejecting the requested instruction warrants reversal of this case for a new trial. Where a jury instruction is supported by the law and has some foundation in the evidence, a district court's decision to reject that instruction must be reversed unless the "other instructions, in their entirety, adequately cover that defense theory." *Thomas*, 612 F.3d at 1120 (citation and quotation marks omitted). Here, we reverse because the other jury instructions do not at all take into account this theory of defense since none of them mention the possibility of derivative citizenship.

**[9]** Further, and as we recently explained in *Sandoval-Gonzalez*, any error having the effect of shifting the burden to the defendant to prove that he is not an alien is prejudicial. 642 F.3d at 724-27. The district court's jury instruction on the alienage element inappropriately relieved the government of its burden of proving that Marguet-Pillado was not a United States citizen. Although we previously rejected Marguet-Pillado's theory of derivative citizenship, the government still was constitutionally required to prove to a jury that Marguet-Pillado was an alien.[4]

## IV. Conclusion

Because the district court erred in rejecting Defendant-Appellant Marguet-Pillado's proposed jury instruction and because we find that error prejudicial, we REVERSE and REMAND for a new trial.[5]

---

[4]Defendant-Appellant Marguet-Pillado also appeals his conviction on the grounds that the prosecutor's closing statement impermissibly misstated the burden of proof. Because we find that the district court's rejection of the proposed jury instruction warrants reversal, it is unnecessary to reach this separate issue.

[5]The dissent suggests that it would be more appropriate for us to seek en banc review in this case because we fail to follow our earlier decision in *Marguet I*. However, this decision does not in any way question or

N.R. SMITH, Circuit Judge, dissenting:

I cannot understand why the majority opinion fails to follow a decision of the Ninth Circuit without asking for a sua sponte en banc proceeding. While Marguet-Pillado is entitled to have a jury determine whether he is an alien, he is not entitled to a jury instruction contrary to the law propounded by our circuit in *United States v. Marguet-Pillado*, 560 F.3d 1078 (9th Cir. 2009) (*Marguet-Pillado I*). Therefore, I must dissent.

To get a conviction here, the government was required to prove that Marguet-Pillado was an alien, defined as "any person not a citizen or national of the United States." *See* 8 U.S.C. § 1101(a)(3). The government presented evidence that Marguet-Pillado was born in Mexico, entered the U.S. on a non-immigrant visa, was granted legal permanent resident status, and had been deported to Mexico. Given this uncontradicted evidence, there is no question the government could meet its burden of proof. Despite earlier admitting that the Ninth Circuit's prior decision precluded him from arguing that he had derivative citizenship, Marguet-Pillado asked the district court to include a jury instruction on derivative citizenship. The district court refused the instruction, instead concluding that the issue had been conclusively determined by the Ninth Circuit in *Marguet-Pillado I* and the jury instruction was contrary to the law of the case. The district court then instructed the jury that "[a]n alien is a person who is not a natural-born or naturalized citizen or national of the United States." The jury found Marguet-Pillado guilty.

---

undermine the holdings in *Marguet I*. Indeed, we now reaffirm the standard for how an individual may acquire derivative citizenship under the version of 8 U.S.C. § 1409(a) that was in effect at the time Marguet-Pillado was born. This decision merely addresses the issue of whether a defendant may be precluded from requiring that the government prove alienage under *Marguet I's* interpretation of that statute based upon the law of the case doctrine.

The district court did not err in holding that the law of the case precluded instructing the jury on derivative citizenship. In *Marguet-Pillado I*, we clearly and explicitly held that Marguet-Pillado "does not have derivative citizenship." 560 F.3d at 1087. Further, as a matter of law, an individual born out of wedlock must have a biological relationship with a U.S. citizen parent in order to claim derivative citizenship. *Id.* at 1083-84. Marguet-Pillado "did not have a blood relationship to Michael Marguet." *Id.* at 1084. The decision, moreover, did not indicate that this legal issue was to be relitigated on remand.

The law of the case doctrine exists to ensure "that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Unlike collateral estoppel (to which the majority analogizes), the law of the case doctrine does apply in criminal cases. *See Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002) (alterations omitted) (holding that law of the case applies if a legal issue was "distinctly put in issue and directly determined by a criminal or civil court").[1] Further, unlike collateral estoppel, where the burden of proof in an immigration hearing or civil case is often lower than the criminal standard, Marguet-Pillado's first trial required the government to prove alienage beyond a reasonable doubt. *See United States v. Marin-Cuevas*, 147 F.3d 889, 892 (9th Cir. 1998) (discussing the difference between alienage findings in deportation proceedings and criminal trials). Therefore, there is no prejudice or constitutional violation in applying the law of the case to preclude the relitigation of issues conclusively decided by an appellate court.

---

[1]This is true in other circuits as well. *See, e.g.*, *United States v. Matthews*, 643 F.3d 9, 13 (1st Cir. 2011); *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002); *United States v. Anglin*, 601 F.3d 523, 527 (6th Cir. 2010); *United States v. Wisecarver*, 2011 WL 2569753 (8th Cir. June 30, 2011); *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996).

Contrary to the majority's decision, there is no basis for holding that applying the law of the case would result in a "manifest injustice." *See Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In his first trial, Marguet-Pillado chose to base his defense on the assertion that he was legitimated under California law and therefore entitled to derivative citizenship based on his relationship to his stepfather Michael Marguet.[2] He continued that strategy on his first appeal. We did not "swallow" that theory. As a result, but for the evidentiary error, Marguet-Pillado's conviction would have been affirmed on that theory and the facts he chose to assert. That his defense was ineffective is not grounds for disregarding the decision of the previous panel in *Marguet-Pillado I*.

The majority may be correct that the evidence in the second trial was "substantially different" from the first. However, that does not justify avoiding the law of the case. First, the evidence had to be different, because we had held that one document was improperly admitted hearsay and remanded for a new trial on that basis. *Marguet-Pillado I*, 560 F.3d at 1086. Second, the evidence was different because, in accordance

---

[2]At his first trial, Marguet-Pillado sought to affirmatively demonstrate that Marguet was not his biological father. He proposed to offer testimony from Juana Pillado that "she raised Carlos Marguet *to believe* Michael Marguet was his biological father;" from a family friend that "he did not learn Michael and Carlos Marguet-Pillado *were not* biologically related until the commencement of Mr. Marguet-Pillado's removal proceedings in 2006;" and from Michael Marguet that he "*considers* himself Carlos Marguet-Pillado's father." Trial Memorandum at 2-3, *United States v. Marguet-Pillado*, No. 3:06-cr-02505-IEG (S.D. Cal. Sept. 24, 2007) (emphasis added). He appealed to this court asserting the same facts and argument. Opening Brief, 2008 WL 6796023, *Marguet-Pillado I*, 560 F.3d at 1087 (claiming that he "was born in Tijuana, Mexico, on [date], to Juana Pillado and an unidentified other man. Before the family immigrated in 1973, Mr. Marguet's non-biological father, Michael Marguet, presented himself as Carlos Marguet's father before the Mexican civil registry." (citations omitted)).

with the law of the case, the government had no need to prove that Michael Marguet could not give derivative citizenship to Marguet-Pillado. We had held that was not possible. At the second trial, the jury saw that Marguet-Pillado was born in Mexico, was granted a non-immigrant visa to enter the country in 1973, and received legal permanent resident status in 1974. The jury also saw that the immigration court found he was a alien and that he was deported. This is similar to the evidence admitted in the first trial. What the jury did not see was the hearsay document we had held was inadmissible. Declining to apply the law of the case because the evidence differed in the second trial makes no sense.

Moreover, refusing such an instruction does not prevent Marguet-Pillado from challenging the sufficiency of the evidence of his alienage or relieve the government from its burden of proof on that element of the offense. Our prior decision aptly illustrates this distinction. Although we held that Marguet-Pillado could not claim derivative citizenship through Michael Marguet, we nonetheless remanded the case, because improperly admitted hearsay evidence was part of the government's proof of alienage. *Id.* at 1087. Such an approach is also in keeping with our decision in *Sandoval-Gonzalez*:

> To be clear, the government does not have the burden of *disproving* each element of derivative citizenship; only "alienage" is among the elements of the crime, so only it must be proven. . . . [T]he government advanced sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that Sandoval is a Mexican citizen, even though the government did not disprove each criterion for derivative citizenship. The government *could* endeavor to disprove each requirement for derivative citizenship in an effort to eliminate all doubt—for example, by producing the defendants' parents' own immigration or residency records—but it need not do so.

*Sandoval-Gonzalez*, 642 F.3d at 724.

Because Marguet-Pillado's claim of derivative citizenship through Michael Marguet was properly foreclosed by the law of the case, I respectfully dissent.