N.R. SMITH, Circuit Judge,
dissenting:
I cannot understand why the majority opinion fails to follow a decision of the Ninth Circuit without asking for a sua sponte en banc proceeding. While MargueNPillado is entitled to have a jury determine whether he is an alien, he is not entitled to a jury instruction contrary to the law propounded by our circuit in United States v. Marguet-Pillado, 560 F.3d 1078 (9th Cir.2009) (Marguet-Pillado I). Therefore, I must dissent.
To get a conviction here, the government was required to prove that Marguet-Pillado was an alien, defined as “any person not a citizen or national of the United States.” See 8 U.S.C. § 1101(a)(3). The government presented evidence that Marguefi-Pillado was born in Mexico, entered the U.S. on a non-immigrant visa, was granted legal permanent resident status, and had been deported to Mexico. Given this uncontradicted evidence, there is no question the government could meet its burden of proof. Despite earlier admitting that the Ninth Circuit’s prior decision precluded him from arguing that he had derivative citizenship, Marguet-Pillado asked the district court to include a jury instruction on derivative citizenship. The district court refused the instruction, instead concluding that the issue had been conclusively determined by the Ninth Circuit in Marguet-Pillado I and the jury instruction was contrary to the law of the case. The district court then instructed the jury that “[a]n alien is a person who is not a natural-born or naturalized citizen or national of the United States.” The jury found Marguet-Pillado guilty.
The district court did not err in holding that the law of the case precluded instructing the jury on derivative citizenship. In Marguet-Pillado I, we clearly and explicitly held that Marguet-Pillado “does not have derivative citizenship.” 560 F.3d at 1087. Further, as a matter of law, an individual born out of wedlock must have a biological relationship with a U.S. citizen parent in order to claim derivative citizenship. Id. at 1083-84. Marguet-Pillado “did not have a blood relationship to Michael Marguet.” Id. at 1084. The decision, moreover, did not indicate that this legal issue was to be relitigated on remand.
The law of the case doctrine exists to ensure “that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.” Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, *1011 75 L.Ed.2d 318 (1983). Unlike collateral estoppel (to which the majority analogizes), the law of the case doctrine does apply in criminal cases. See Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir.2002) (alterations omitted) (holding that law of the case applies if a legal issue was “distinctly put in issue and directly determined by a criminal or civil court”).[1] Further, unlike collateral estoppel, where the burden of proof in an immigration hearing or civil case is often lower than the criminal standard, Margueh-Pillado’s first trial required the government to prove alienage beyond a reasonable doubt. See United States v. Marin-Cuevas, 147 F.3d 889, 892 (9th Cir.1998) (discussing the difference between alienage findings in deportation proceedings and criminal trials). Therefore, there is no prejudice or constitutional violation in applying the law of the case to preclude the relitigation of issues conclusively decided by an appellate court.
Contrary to the majority’s decision, there is no basis for holding that applying the law of the case would result in a “manifest injustice.” See Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir.1997) (en banc) overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). In his first trial, Marguet-Pillado chose to base his defense on the assertion that he was legitimated under California law and therefore entitled to derivative citizenship based on his relationship to his stepfather Michael Marguet.[2] He continued that strategy on his first appeal. We did not “swallow” that theory. As a result, but for the evidentiary error, Marguet-Pillado’s conviction would have been affirmed on that theory and the facts he chose to assert. That his defense was ineffective is not grounds for disregarding the decision of the previous panel in Marguet-Pillado I.
The majority may be correct that the evidence in the second trial was “substantially different” from the first. However, that does not justify avoiding the law of the case. First, the evidence had to be different, because we had held that one document was improperly admitted hearsay and remanded for a new trial on that basis. Marguet-Pillado I, 560 F.3d at 1086. Second, the evidence was different because, in accordance with the law of the case, the government had no need to prove that Michael Marguet could not give derivative citizenship to Marguet-Pillado. We had held that was not possible. At the second trial, the jury saw that Marguet-Pillado was born in Mexico, was granted a non-immigrant visa to enter the country in 1973, and received legal permanent resident status in 1974. The jury also saw *1012 that the immigration court found he was a alien and that he was deported. This is similar to the evidence admitted in the first trial. What the jury did not see was the hearsay document we had held was inadmissible. Declining to apply the law of the case because the evidence differed in the second trial makes no sense.
Moreover, refusing such an instruction does not prevent Marguet-Pillado from challenging 'the sufficiency of the evidence of his alienage or relieve the government from its burden of proof on that element of the offense. Our prior decision aptly illustrates this distinction. Although we held that MargueN-Pillado could not claim derivative citizenship through Michael Marguet, we nonetheless remanded the case, because improperly admitted hearsay evidence was part of the government’s proof of alienage. Id. at 1087. Such an approach is also in keeping with our decision in Sandovalr-Gonzalez:
To be clear, the government does not have the burden of disproving each element of derivative citizenship; only “alienage” is among the elements of the crime, so only it must be proven.... [T]he government advanced sufficient evidence for a rational factfinder to conclude beyond a reasonable doubt that Sandoval is a Mexican citizen, even though the government did not disprove each criterion for derivative citizenship. The government could endeavor to disprove each requirement for derivative citizenship in an effort to eliminate all doubt — for example, by producing the defendants’ parents’ own immigration or residency records — but it need not do so.
Sandoval-Gonzalez, 642 F.3d at 724.
Because Marguet-Pillado’s claim of derivative citizenship through Michael Marguet was properly foreclosed by the law of the case, I respectfully dissent.

. This is true in other circuits as well. See, e.g., United States v. Matthews, 643 F.3d 9, 13 (1st Cir.2011); United States v. Matthews, 312 F.3d 652, 657 (5th Cir.2002); United States v. Anglin, 601 F.3d 523, 527 (6th Cir.2010); United States v. Wisecarver, 644 F.3d 764 (8th Cir.2011); United States v. Stinson, 97 F.3d 466, 469 (11th Cir. 1996).

. At his first trial, Marguet-Pillado sought to affirmatively demonstrate that Marguet was not his biological father. He proposed to offer testimony from Juana Pillado that “she raised Carlos Marguet to believe Michael Marguet was his biological father;” from a family friend that “he did not learn Michael and Carlos Marguet-Pillado were not biologically related until the commencement of Mr. Marguet-Pillado’s removal proceedings in 2006;” and from Michael Marguet that he “considers himself Carlos Marguet-Pillado’s father.” Trial Memorandum at 2-3, United States v. Marguet-Pillado, No. 3:06-cr-02505-IEG (S.D.Cal. Sept. 24, 2007) (emphasis added). He appealed to this court asserting the same facts and argument. Opening Brief, 2008 WL 6796023, Marguet-Pillado I, 560 F.3d at 1087 (claiming that he "was born in Tijuana, Mexico, on [date], to Juana Pillado and an unidentified other man. Before the family immigrated in 1973, Mr. Marguet’s non-biological father, Michael Marguet, presented himself as Carlos Marguet’s father before the Mexican civil registry.” (citations omitted)).