**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

FRANCISCO NAVARRO,
*Defendant-Appellant.*

No. 08-50365

D.C. No.
3:07-CR-00222-
IEG-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
October 7, 2009—Pasadena, California

Filed June 11, 2010

Before: Andrew J. Kleinfeld and Richard C. Tallman,
Circuit Judges, and David G. Trager,* District Judge.

Opinion by Judge Kleinfeld

---

*The Honorable David G. Trager, United States District Judge for the
Eastern District of New York, sitting by designation.

## COUNSEL

Ellis M. Johnston, III, Federal Defenders of San Diego, Inc., for the defendant-appellant.

Karen P. Hewitt, United States Attorney; Bruce R. Castetter, Assistant U.S. Attorney; David P. Curnow, Assistant U.S. Attorney; Andrew G. Schopler (argued), Assistant U.S. Attorney; for the plaintiff-appellee.

## OPINION

KLEINFELD, Circuit Judge:

We address a duress defense and a mistaken grand jury charge.

### I.   Facts

Navarro worked as a general assistant, mechanic and occasional courier for a drug smuggling organization in Tijuana, Mexico. He had served time in a California state prison for possessing marijuana for sale. After his release, he returned to work for his old criminal association, and also provided information on his associates to United States Immigration and Customs Enforcement. His information may have assisted in leading to the arrest of a leader of the criminal organization.

Navarro was told to drive from Tijuana to Mexicali to pick up some "parts," evidently vehicle parts. While there, he drank beer with "Ruben," another lower level member of the criminal organization, awaiting the call to tell him which junkyard to go to for the parts. Ruben told him that the leaders were suspicious about the leader's arrest, making Navarro very nervous. They got the call around midnight, with instructions to drive a truck with a load of drugs back to Tijuana and across the border to Los Angeles. Ruben would ride along to Navarro's home in Tijuana to pick up a car. Navarro testified that he believed he would be killed on the drive from Mexicali to Tijuana and thrown someplace where his body would not be found. That did not occur. Navarro and Ruben drove to Tijuana. Navarro got something to eat in Tijuana and woke up his wife at his house there, and his wife drove his truck to the border while he slept.

They got caught at the San Ysidro border station. A dog alerted to the left rear of the pickup truck, the authorities x-rayed the truck and saw anomalies, an agent removed the left taillight assembly, and over thirteen kilograms of heroin were pulled out of the cavity between the truck bed and the left exterior sheet metal. An Immigration and Customs Enforcement agent talked to Navarro in his holding cell, and arranged with him to do the scheduled heroin delivery in Los Angeles under surveillance. Navarro told him he had assisted a federal agency with information before, but could not remember the names of the agency or his controlling agents or a phone number, and said he had not told the federal agents about the load of heroin with which he had been caught. The controlled delivery was supposed to be at a Taco Bell near a Jack in the Box, but there turned out to be two, one on either side of the Jack in the Box, and no one showed up to take delivery at the Taco Bell Navarro picked.

Navarro was indicted for importing heroin[1] and possession

---

[1] 21 U.S.C. §§ 952, 960.

with intent to distribute.[2] At trial he testified that he had acted under duress. He claimed that the criminal organization suspected that he was a "snitch," so he had to pass the test of smuggling the drugs across the border or they would kill him. The district court gave the jury a duress instruction, over the government's objection. However, the jury convicted Navarro on both counts of the indictment, and the court sentenced Navarro to 240 months of imprisonment,[3] the statutory minimum considering his previous drug conviction.[4]

On appeal, Navarro argues that: (1) the district court inadequately responded to a prosecutorial misstatement of the law in closing argument; (2) the grand jury charge was structural error, entitling him to dismissal of the indictment; and (3) he was entitled to have his prior conviction proved beyond a reasonable doubt to the jury. The third argument necessarily fails because of the Supreme Court decision in *Almendarez-Torres v. United States*[5] and numerous decisions of our court.[6] The first two arguments need attention here.

---

[2]*Id.* § 841(a)(1).

[3]He was sentenced to 240 months of imprisonment for each of his two convictions, importing and possessing, with the two sentences running concurrently.

[4]21 U.S.C. § 841(b)(1)(A) provides a mandatory minimum sentence of twenty years for a violation of § 841(a)(1) if the offender commits the offense "after a prior conviction for a felony drug offense has become final."

[5]523 U.S. 224, 230-35 (1998); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

[6]*See, e.g., United States v. Garcia-Hernandez*, 569 F.3d 1100, 1103 (9th Cir. 2009); *United States v. Covian-Sandoval*, 462 F.3d 1090, 1096-97 (9th Cir. 2006); *United States v. Beng-Salazar*, 452 F.3d 1088, 1091 (9th Cir. 2006); *United States v. Rodriguez-Lara*, 421 F.3d 932, 949-50 (9th Cir. 2005).

## II.   Analysis

### A.   Duress defense.

Navarro argues that the prosecutor misstated the law of duress during his rebuttal closing argument by telling the jurors that the threat had to be express. He claims this was prejudicial because it misled the jury into thinking there can be no duress absent an express threat. Defense counsel objected immediately. The district court overruled the objection, and instructed the jury that "lawyers can argue their interpretation of the law. The law is that it's an immediate threat of death or serious bodily injury, and you can read the instruction for yourselves[.]" Navarro unsuccessfully moved for a mistrial on this ground. The government argues that it did not misstate the law, and even if it did, any error was harmless because Navarro did not take advantage of a reasonable opportunity to escape the threatened harm when he arrived at the border station.

Generally, a district court's decision to overrule an objection raised during closing argument,[7] and its denial of a motion for a mistrial,[8] are reviewed for an abuse of discretion. In *United States v. Segna*[9] we held that a prosecutor's unobjected-to erroneous and misleading statements of law shifting the burden of proof were plain error requiring reversal, even though the judge correctly instructed the jury on burden of proof, because in that particular case, it was "highly probable that the prosecutor's argument materially affected the verdict and thereby seriously prejudiced Segna."[10] Navarro argues that *Segna* controls here.

---

[7]*United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir. 1984); *cf. Herring v. New York*, 422 U.S. 853, 862 (1975) (dicta).

[8]*United States v. Banks*, 514 F.3d 959, 973 (9th Cir. 2008).

[9]555 F.2d 226 (9th Cir. 1977).

[10]*Id.* at 230-32.

The district court instructed the jury that to establish a defense of duress, the defendant must prove by a preponderance of evidence three things: (1) immediate threat of death or serious bodily; (2) well-founded fear that the threat would be carried out; and (3) no reasonable opportunity to escape the threatened harm:[11]

> Duress legally excuses the crime of importation of heroin and possession with intent to distribute heroin.
>
> The defendant must prove duress by a preponderance of the evidence. A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true.
>
> A defendant acts under duress only if at the time of the crime charged:
>
> 1. There was an immediate threat of death or serious bodily injury to the defendant or a family member of the defendant if the defendant did not participate in the commission of the crime;
>
> 2. The defendant had a well-founded fear that the threat of death or serious bodily injury would be carried out; and
>
> 3. The defendant had no reasonable opportunity to escape the threatened harm.
>
> If you find that each of these things has been proved

---

[11]*See United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008).

by a preponderance of the evidence, your verdict should be for the defendant.[12]

Navarro does not challenge the instruction.

The prosecutor, discussing duress in his rebuttal argument, told the jury that it had to follow the judge's instructions, and then went on with this interpretation:

> There has to be an immediate threat and it has to be not just a generalized threat. Again, being a confidential informant might be dangerous. They might even, somebody might even threaten to kill you if they found out that you were a snitch, but what's important here is that they have to say, do this or we will kill you, and there's no evidence that that [defense counsel objects here] happened.

Navarro's counsel objected, and the court furnished this admonition to the jury:

> The lawyers can argue their interpretation of the law. The law is that it's an immediate threat of death or serious bodily injury, and you can read the instructions for yourselves, ladies and gentlemen, but remember you're to consider all the instructions together.

The prosecutor went on to argue that Navarro may have felt threatened, and had testified that he thought he would be killed on the drive from Mexicali to Tijuana, but "[n]obody said, cross [the border with] these drugs or we'll kill you."

After a few hours of deliberations, the jury sent a note to the judge, "does the jury need to determine that the defendant has proved all three items or can duress be proved if the jury

---

[12]Ninth Circuit Crim. Jury Instr. 6.6 (2003).

finds the defense has proved items two and three only?" After consulting with counsel, the court sent the jury a response stating that all three had to be proved by a preponderance of evidence. A half hour later, the jury rendered a guilty verdict.

[1] Navarro argues that a threat does not need to be explicit and verbal and may be implied. In this he is correct. A threat, for purposes of duress, may be express or implied, so long as it is an immediate threat as distinguished from generalized fear.[13] There is no support for the proposition that a threat must consist of express words. Nor would the proposition make any sense or be consistent with the interpretation of threats in other contexts. A robber who points a gun at the victim and says "give me your money" makes an immediate threat of death by so doing, whether he adds the words "or I'll kill you" or not.[14] Likewise someone may intimidate a witness by

---

[13]*See, e.g.*, *United States v. Cotto*, 347 F.3d 441, 446-47 (2d Cir. 2003) ("We hold that the coercion occasioned by a defendant's generalized fear of a third party, based solely on knowledge of that third party's violent conduct toward others rather than on any explicit or implicit threat, is insufficient to constitute the unusual or exceptional circumstances warranting a departure under § 5K2.12 [for duress not amounting to a complete defense]."); *United States v. Sachdev*, 279 F.3d 25, 29 (1st Cir. 2002) ("The Guideline [U.S.S.G. § 5K2.12], we think, encompasses both explicit and implicit threats of harm."); *cf. United States v. Lopez-Garcia*, 316 F.3d 967, 973 (9th Cir. 2003) (discussing § 5K2.12 duress guideline and affirming the rejection of it in that case, not because the threat was implied, but because the defendant's actions were not reasonable); *United States v. Homick*, 964 F.2d 899, 905-06 (9th Cir. 1992) (rejecting a battered woman syndrome defense, "a species of the defense of duress," because "[t]here was nothing implicitly or explicitly threatening about either conversation").

[14]*See United States v. Figueroa*, 105 F.3d 874, 879 (3d Cir. 1997) ("When a robber announces, by word or by action, that he possesses a gun, he also is communicating to the reasonable victim his intention to use that weapon."); *United States v. France*, 57 F.3d 865, 867 (9th Cir. 1995) (holding that handing a bank teller a note reading, "Give me all the 100s and 50s in your drawer. I have dynamite." was an express threat of death); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) ("We believe that the threats implicit in Hopkins' written and verbal demands for money provided sufficient evidence of intimidation to support the jury's verdict [for bank robbery].").

glaring at him, drawing his hand across his throat, and making a motion with his fingers of shooting him, without saying a word.[15] Statutes criminalizing threats commonly say "express or implied,"[16] doubtless because criminalizing only express and not implied threats would turn trials about threats into trials about grammar, without usefully addressing the social evil of criminal threats. Where the law just says "express," we nevertheless have read implied threats into it; under the former guidelines enhancement for "express" threats of death during a robbery,[17] we treated "Give me the money. I have

---

[15]*United States v. Balzano*, 916 F.2d 1273, 1279, 1291 (7th Cir. 1990); *see also United States v. Loudon*, 385 F.3d 795, 798-99 (2d Cir. 2004).

[16]*See, e.g.*, 18 U.S.C. § 891(7) ("An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."); Alaska Stat. § 11.41.470(8) (defining "without consent" for sexual offenses as including coercion through express or implied threats); Ariz. Rev. Stat. § 13-2301(A)(6) (defining "extortionate means" to include "an express or implicit threat"); Cal. Penal Code § 136.1(c)(1) (defining intimidation of witnesses to include "an express or implied threat of force or violence" against the witness); Haw. Rev. Stat. § 707-700 (defining "compulsion" to include "a threat, express or implied"); Mont. Code Ann. § 13-35-226(1) ("It is unlawful for any employer, in paying employees the salary or wages due them, to include with their pay the name of any candidate or any political mottoes, devices, or arguments containing threats or promises, express or implied, calculated or intended to influence the political opinions or actions of the employees."); Or. Rev. Stat. § 163.305(2) (defining "forcible compulsion" for sexual offenses as including coercion through express or implied threats); Wash. Rev. Code § 9A.44.010(6) (defining "forcible compulsion" for sexual offenses as including coercion through express or implied threats).

[17]U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(F) (guideline for robbery). Prior to 1997, § 2B3.1(b)(2)(F) read "if an express threat of death was made, increase by 2 levels." The November 1997 amendment changed "an express threat" to "a threat." The current application notes to § 2B3.1 makes clear that "a threat of death" includes implied threats:

"A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhance-

dynamite" as "express," even though the statement lacks any express threat to do anything with the dynamite.[18] When the shoe is on the other foot, and the defendant rather than the government claims that a threat was made, a threat may likewise be express or implied, by words or otherwise. Absence of clear and express words or gestures may be evidence that there was no threat, and in some circumstances ("if he does not pick me up on time to get to the movie I'll kill him") express words of threat may not really be threats. Express words of threat are neither a *sine qua non* of threats nor conclusive proof of threats.

**[2]** It is not clear, though, that the prosecutor told the jury that the threat had to be express and not merely implied. This distinguishes *Segna*, the case on which Navarro relies. The prosecutor's words "they have to say, do this or we will kill you" could be taken in isolation to mean that the threat has to be in express words. But the words were not in isolation, they were in a context. The context suggests that the prosecutor was addressing the requirements of immediacy and threat as distinguished from fear, rather than the explicitness of the threat.

Part of the context was that Navarro had not been killed as

---

ment to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G. § 2B3.1 cmt. n.6.

[18]*France*, 57 F.3d at 867.

he feared, not on the after-midnight drive from Mexicali to Tijuana, not when he failed to deliver the valuable heroin inventory, not in custody. The prosecutor argued to the jury that the threat had to be real and immediate, not merely the generalized fear and threatening circumstances that exist for any informant. The prosecutor made his remarks as part of an argument that there was no genuine, immediate threat, as demonstrated by Navarro's safe arrival at his home in Tijuana after his feared drive from Mexicali. Navarro believed he would be killed during the drive from Mexicali to Tijuana, but he was not. That left Navarro with no immediate threat, just fear from being both a conspirator and a "snitch."

**[3]** The judge immediately reminded the jury that all the lawyers were doing was providing argument, and that her instructions would control. In the circumstances, this sufficed to cure any mistaken inference the jury might draw from the prosecutor's argument. The instructions did not require an express verbal threat (which would have been error), just an immediate one. Though the jury note focused on the first element, it is reasonable to infer from the evidence and arguments that its concern was not about whether the threat had to be verbal and express, but rather that it had to be a threat and not just a fear. The law on the duress defense is that "fear alone is not sufficient."[19] The prosecutor was correct in arguing that fear without an immediate threat could not satisfy the first element of the duress defense.

**[4]** In *Segna*, it was "highly probable that the prosecutor's [misleading] argument materially affected the verdict and thereby seriously prejudiced Segna."[20] That is not the case here. "The element of immediacy requires that there be some evidence that the threat of injury was present, immediate, or impending. A veiled threat of future unspecified harm will not

---

[19]*United States v. Jennell*, 749 F.2d 1302, 1305 (9th Cir. 1984).

[20]*See Segna*, 555 F.2d at 232.

satisfy this requirement."[21] "[T]he trial judge has broad discretion in controlling closing argument," and "improprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge."[22] Here, the prosecutor's argument emphasized the need for the threat to be immediate, rather than a generalized threat to harm any "snitch." Furthermore, any error the prosecutor may have made in defining duress was neutralized by the judge's immediate reminder that the court's instructions controlled. Thus the argument did not prejudice Navarro.

## B.   Grand jury charge.

A different district judge, who charged the grand jury, told the jurors that the prosecutor was duty-bound to present exonerating evidence:

> If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

He added a general encomium to the integrity of federal prosecutors:

> If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid,

---

[21]*United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984) (internal quotation marks and brackets omitted).

[22]*United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir. 1984) (internal editorial marks and quotation marks omitted).

they'll be honest, that they'll act in good faith in all
matters presented to you.

Navarro contends that in combination, this charge amounted
to structural error, entitling him to dismissal of the resulting
indictment.

Grand juries operate secretly. All the judge does, unless a
motion comes to him, is swear in and charge the grand jury
before it begins its work, and days, weeks, or months later,
receive the indictments it hands down.[23] A district judge does
not preside in or even enter the grand jury room.[24] The only
contact the grand jurors have with the court is the charge the
judge gives before they begin,[25] and the use of a room in the
courthouse. Most federal judges read or paraphrase a scripted
charge from the Benchbook for Federal District Judges pub-
lished by the Federal Judicial Center, or the Judicial Confer-
ence of the United States. These used to differ (the Bench
Book omitted the encomium to federal prosecutors' integrity)[26]
but now they are the same and include that encomium.[27] The
model charge does not state that prosecutors are duty bound
to present exonerating evidence.[28]

[5] Taken by itself, the language instructing the grand jury

---

[23]Fed. R. Crim. P. 6.

[24]*United States v. Calandra*, 414 U.S. 338, 343 (1974); Fed. R. Crim.
P. 6(d).

[25]*United States v. Williams*, 504 U.S. 36, 47 (1992) ("Judges' direct
involvement in the functioning of the grand jury has generally been con-
fined to the constitutive one of calling the grand jurors together and
administering their oaths of office.").

[26]Federal Judicial Center, *Benchbook for U.S. District Court Judges*
§ 7.04 (4th ed. 2000); *see also United States v. Navarro-Vargas*, 408 F.3d
1184, 1197 n.18 (9th Cir. 2005) (en banc).

[27]*See* Federal Judicial Center, *Benchbook for U.S. District Court Judges*
§ 7.04, at 222 n.1 (5th ed. 2007).

[28]*See generally id.* § 7.04.

that federal prosecutors are, based on "past experience," candid, honest, and acting with integrity in the grand jury room, is substantially similar to an instruction we upheld against constitutional challenge in *United States v. Navarro-Vargas*.[29] While perhaps troubling because of its apparent endorsement of one side in our adversary system, we are bound by *Navarro-Vargas* to the proposition that "although this passage may include unnecessary language, it does not violate the Constitution."[30]

[6] The language telling the grand jurors that prosecutors must present exculpatory evidence, though, is flat wrong. And the error is magnified by the encomium to prosecutorial integrity. The judge told the grand jury that "U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they are aware of that evidence." That is not the law. The Supreme Court held in *United States v. Williams* that a prosecutor does *not* have a duty to present exculpatory evidence to a grand jury when seeking an indictment.[31] We have held that "prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."[32]

The exculpatory evidence Navarro says should have been presented if the prosecutor had had such a duty was not his duress defense, but his public authority defense. Navarro's theory is that *mens rea* was absent because he imported the heroin at the request of a government enforcement officer with the reasonable belief that he was acting as an authorized agent to assist in law enforcement. The prosecutor conceded not having presented any exculpatory evidence to the grand jury, Navarro moved to dismiss the indictment because of the erroneous instruction about duty to present this exculpatory

---

[29] 408 F.3d at 1206-07.

[30]*Id.* at 1207.

[31]504 U.S. 36, 52-53 (1992); *United States v. Haynes*, 216 F.3d 789, 798 (9th Cir. 2000) (following *Williams*).

[32]*Haynes*, 216 F.3d at 798.

evidence, and the district court denied the motion to dismiss. At trial, the judge instructed the petit jury on the public authority defense. The jury rejected the defense, convicting Navarro.

**[7]** The government argues that the instruction was correct, because (1) the United States Attorney's Manual establishes an internal policy of the Justice Department that prosecutors ought to disclose to the grand jury "substantial evidence that directly negates the guilt" of the prospective defendant if the prosecutor is "personally aware" of it, and (2) the district judge knew this and knew a prosecutor could be disciplined if he did not present such evidence, because of his previous work in the United States Attorney's office. We reject this argument. A grand jury should not be told that the law requires that the prosecutor present exculpatory evidence, since it does not. Justice Department policy may change and is not the law. The policy requiring presentation of "substantial evidence that directly negates the guilt" if the prosecutor is "personally aware" of it, is narrower than the judge's description of the prosecutor being "duty-bound to present evidence that cuts against" guilt. The judge's misstatement of the law is especially troubling when combined with the language that the grand jury can count on the candor, honesty, and good faith of the prosecutors who will appear before them. That gave the grand jurors double assurance that they would hear about any exculpatory evidence. Instructing the grand jury that the United States Attorney's office was obligated to present exculpatory evidence if aware of it amounted to an abuse of discretion, since it was incorrect as a matter of law.

**[8]** Since the charge was erroneous, we must decide what to do about it. Navarro urges that an erroneous charge constitutes structural error requiring dismissal of the indictment, so that we must reverse. We do not agree. Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must

be disregarded."**³³** This rule applies to errors in grand jury proceedings.**³⁴**

If the error were structural, it would not matter that the error was harmless, and we would reverse denial of the motion to dismiss without regard to whether Navarro's substantial rights had been affected.**³⁵** That the grand jury is a constitutionally required part of the structure of federal criminal justice does not bear on whether the error is "structural," since "structural error" is a term of art for error requiring reversal regardless of whether it is prejudicial or harmless, not for error in some way affecting the structure of criminal proceedings. Navarro cites no case holding that an error in the grand jury charge is structural. *Neder v. United States*³⁶ holds that except for a "very limited class of cases" (the Court mentions complete denial of counsel, biased trial judge, racial discrimination in selection of grand jury, denial of self representation at trial, denial of public trial, defective reasonable doubt instruction), all harmless errors including constitutional errors must be disregarded on appeal.**³⁷**

**[9]** We have not addressed the question of remedies for erroneous grand jury charges. In *Navarro-Vargas*, we held that the grand jury charge was not erroneous, so we had no occasion to decide what we would do if it had been.

The Supreme Court has addressed the effect of error in grand jury proceedings. *United States v. Mechanik*³⁸ holds that a guilty verdict by a petit jury renders violation of Federal Rule of Criminal Procedure 6(d), which provides who may be

---

**³³**Fed. R. Crim. P. 52(a).

**³⁴**enote *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-55 (1988); *United States v. Mechanik*, 475 U.S. 66, 71-72 (1986).

**³⁵***See United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006).

**³⁶**527 U.S. 1 (1999).

**³⁷***Id.* at 8 (listing cases).

**³⁸**475 U.S. at 71-72.

present in the grand jury room, harmless.[39] The *ratio decidendi* is that "[t]he Rule protects against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty." The petit jury's verdict establishes that probable cause existed.[40] Though *Mechanik* makes an exception for racial discrimination in the composition of the grand jury requiring dismissal of the indictment based on *Vasquez v. Hillery*,[41] the reasons for the exception "have little force outside the context of racial discrimination in the composition of the grand jury."[42] After *Mechanik* came down we held in *United States v. Benjamin*[43] that district court denials of motions to dismiss for such errors were appealable under the collateral order doctrine because appeal would be futile after a verdict, but the Court overruled *Benjamin* in *Midland Asphalt Corp. v. United States*.[44]

*Bank of Nova Scotia v. United States*[45] adopted the standard urged in Justice O'Connor's concurrence in *Mechanik*, that for errors brought to the district court's attention "prior to the conclusion of the trial,"[46] dismissal of the indictment "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."[47] This standard does not "circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a),"[48] because it requires

---

[39]*Id.* at 67.

[40]*Id.* at 70.

[41]474 U.S. 254 (1986).

[42]*Mechanik*, 475 U.S. at 70 n.1

[43]812 F.2d 548 (9th Cir. 1987).

[44]489 U.S. 794 (1989).

[45]487 U.S. 250.

[46]*Bank of Nova Scotia*, 487 U.S. at 256.

[47]*Id.* (internal quotation marks omitted) (citing *Mechanik*, 475 U.S. at 78 (O'Connor, J., concurring in the judgment)).

[48]*Id.* at 254.

the defendant to suffer prejudice. *Bank of Nova Scotia* requires that harmless grand jury error be disregarded but refines the definition of "harmless." The Court distinguished *Vasquez*, racial discrimination in selection of grand jurors, and *Ballard v. United States*,[49] exclusion of women from the grand jury, but goes no farther in carving out structural error. Even the extensive prosecutorial misconduct in *Bank of Nova Scotia* justified only contempt and referral for Justice Department and bar discipline as remedies, not dismissal of the indictment.[50]

It is clear, under these decisions, that if a motion to dismiss is made before the verdict, the district judge should apply the *Bank of Nova Scotia* standard, and if the district court grants a motion to dismiss the indictment, the court of appeals should examine the order under that standard. But these two decisions arguably left undecided the remedy where, as here, the error is brought to the district court's attention before the verdict, but the court did not rule on the motion to dismiss until after the jury returned a verdict, or where appeal was taken after such a motion had been denied and a guilty verdict and judgment was entered. We held in *United States v. Spillone*,[51] where the petit jury's guilty verdict arguably rendered any error harmless, that we review the denial of the motion to dismiss *de novo*, and avoided choosing between the *Mechanik* and *Bank of Nova Scotia* standards because the appellant lost under both standards.

Subsequently, in *People of the Territory of Guam v. Muna*,[52] we held that "[o]n appellate review of the case after conviction, the *Mechanik* standard applies," and a guilty verdict renders error in the presentation to the grand jury harmless

---

[49]329 U.S. 187 (1946).

[50]487 U.S. at 263.

[51]879 F.2d 514, 520-21, 523-25 (9th Cir. 1989).

[52]999 F.2d 397 (9th Cir. 1993).

beyond a reasonable doubt.[53] Under *Muna*, the district judge's erroneous charge to the grand jury is therefore harmless. The petit jury never heard the erroneous instruction and could not have been affected by it. The petit jury's conviction of Navarro beyond a reasonable doubt and rejection of his defenses establishes that there was probable cause to charge him, so he could not have been prejudiced. It did not matter that the prosecutor did not present Navarro's public authority defense to the grand jury, because he had none. He had not told his handlers about the heroin smuggling and they had not told him to do it. *United States v. Lennick*[54] appears to apply both the *Mechanik* and *Bank of Nova Scotia* standards, but found the error harmless under either standard, so it was not necessary to choose between them.

The Eleventh Circuit likewise avoided deciding whether to apply *Mechanik* or *Bank of Nova Scotia*, where the error was harmless under both.[55] The First,[56] Seventh,[57] and Tenth[58] Circuits, however, have held consistently with our decision in *Muna* that a petit jury's verdict of guilty beyond a reasonable doubt establishes *a fortiori* that there was probable cause to charge, so grand jury error is rendered harmless by conviction.

**[10]** Our review is controlled by *Muna*. Even if error in the grand jury proceedings (other than the structural errors denoted in *Vasquez* and *Ballard*) was brought to the attention of the district court prior to trial, where the motion was denied and a guilty verdict was returned, the error is rendered harmless by the verdict. Accordingly, the district judge's error in

---

[53]*Id.* at 399.

[54]18 F.3d 814, 817-18 (9th Cir. 1994).

[55]*United States v. Jennings*, 991 F.2d 725, 728-29 (11th Cir. 1993).

[56]*United States v. Reyes-Echevarria*, 345 F.3d 1, 5 (1st Cir. 2003).

[57]*United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005).

[58]*United States v. Wiseman*, 172 F.3d 1196, 1205-06 (10th Cir. 1999).

instructing the grand jury that the government was duty-bound to present exculpatory evidence was harmless. Had the motion to dismiss been granted, the *Bank of Nova Scotia* standard would control review, but since it was denied and the defendant was convicted beyond a reasonable doubt, *Mechanik* controls and the conviction establishes that the error was harmless. It does not matter whether the *Bank of Nova Scotia* "grave doubt" standard would have been met. In *Bank of Nova Scotia*, although a verdict of guilty had been rendered, the judgment on that verdict had been vacated on appeal, and on remand, the indictment had been dismissed before trial. The *Bank of Nova Scotia* "grave doubt" standard applies to dismissal before the verdict. The *Mechanik-Muna* rule applies after verdict and judgment.

**AFFIRMED.**