**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

ETHAN ALLEN BERRY,
    *Defendant-Appellant.*

No. 10-10361

D.C. No.
4:08-cr-00233-
DLJ-1

OPINION

Appeal from the United States District Court
for the Northern District of California
D. Lowell Jensen, Senior District Judge, Presiding

Argued and Submitted
July 22, 2011—San Francisco, California

Filed June 12, 2012

Before: A. Wallace Tashima and Johnnie B. Rawlinson,
Circuit Judges, and Terry J. Hatter, Jr.,
Senior District Judge.*

Opinion by Judge Rawlinson;
Partial Concurrence and Partial Dissent by Judge Tashima

---

*The Honorable Terry J. Hatter, Jr. Senior United States District Judge
for the Central District of California, sitting by designation.

**COUNSEL**

Patrick D. Robbins (argued), Mikael A. Abye, Jared R. Sams, Shearman & Sterling, LLP, San Francisco, California, for appellant Ethan Allen Berry.

Melinda Haag, United States Attorney; Barbara J. Valliere, Chief, Appellate Division, Christina M. McCall, Anne M. Voigts (argued), Assistant United States Attorneys, San Francisco, California, for appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Ethan Berry (Berry) appeals his conviction for social security fraud pursuant to 42 U.S.C. § 408(a)(5). We have jurisdiction under 28 U.S.C. § 1291 and affirm the conviction.

## I.  BACKGROUND

Berry was appointed representative payee for social security benefits to be paid to his son, DB. The benefits were to be

used for DB's maintenance. One of Berry's first payments was a retroactive lump sum payment for benefits from April, 2000, through June, 2005, in the amount of $42,086. Beginning in August, 2005, Berry received regular monthly benefit payments for his son.

Berry deposited most of the money he received for DB, including the lump sum payment, into a bank account belonging to his sister, Diane Williams. The bank account was a business account, for which Berry had signatory authority. Neither DB nor his mother had access to this account.

The lump sum retroactive payment was deposited in Diane Williams' business bank account on September 16, 2005. Six days later, Diane Williams withdrew $41,500 from the bank account and deposited it into her personal credit union account. Another benefit check for DB was deposited into an investment account to which only Diane Williams had access. Neither DB nor his mother, received any of the money obtained by Berry as DB's representative payee during the approximately eighteen months when Berry received checks on DB's behalf.[1] It was only after the Department of Child Support Services contacted DB's mother that she learned DB was eligible for Social Security Benefits due to Berry's disability. After being advised of DB's eligibility, Walker applied to be her son's representative payee.

The Grand Jury indicted Berry on April 9, 2008. Following a four-day trial, the jury found Berry guilty of one count of Social Security Representative Fraud in violation of 42 U.S.C. § 408(a)(5).

During closing argument, the prosecutor represented to the

_____

[1]This evidence most assuredly refutes the dissent's unsupported suggestion that the benefits remain in "various accounts." *Dissenting Opinion* p.6680. Importantly, when Berry was expressly asked to account for the proceeds, he failed to respond.

jury that Berry did not deny the first two elements of the offense. Berry's defense counsel immediately objected. After sustaining the objection, the judge told the prosecutor to rephrase her statement. Despite this exchange, the prosecution repeatedly made statements inferring admissions by Berry. Defense counsel repeatedly objected, and the court repeatedly ordered the prosecutor to rephrase her statements and limit her comments to evidence presented during trial. The prosecution also introduced a slide referencing "Defendant's Stories and Excuses." When defense counsel objected to the slide, the judge immediately ordered the slide to be removed and again reminded the prosecutor to limit her comments to the evidence introduced during trial.

While instructing the jury, the judge explained that a defendant was innocent until proven guilty, that the jury was to consider only the evidence presented during trial to determine if the defendant's conduct met the elements of the crime, and emphasized what was considered evidence and what was not. Specifically, the judge stressed that arguments or statements by the attorneys were not evidence. Following the presentation of evidence by the prosecution, Berry moved for a judgment of acquittal and for a new trial. Both motions were denied. Berry was sentenced to four months' imprisonment and three years supervised release. Berry filed a timely notice of appeal.

## II.   STANDARDS OF REVIEW

A district court's formulation of jury instructions is reviewed for an abuse of discretion; when there is a question whether the jury instruction misstated an element of the crime, review is *de novo*. *See United States v. Dearing*, 504 F.3d 897, 900 (9th Cir. 2007).

The district court's resolution of Confrontation Clause claims is reviewed *de novo*. *See United States v. Marguet-Pillado*, 560 F.3d 1078, 1081 (9th Cir. 2009). Additionally,

"we review de novo the district court's construction of hearsay rules, but review for abuse of discretion the court's determination to admit hearsay evidence. . . ." *Id.* (citation omitted).

We review claims of prosecutorial misconduct for plain error if there was no objection during the trial. *See United States v. Navarro*, 608 F.3d 529, 532 (9th Cir. 2010). When it is highly probable that a prosecutor's argument is so prejudicial that it materially affects the verdict, reversal is required. *See id.* If defense counsel objected to the prosecutor's improper comments during trial, we review for harmless error. *See United States v. Blueford*, 312 F.3d 962, 973 (9th Cir. 2002), *as amended.*

A motion for a new trial is reviewed for abuse of discretion. *See Sec. Exch. Comm'n. v. Todd*, 642 F.3d 1207, 1225 (9th Cir. 2011).

When a district court denies a motion for a judgment of acquittal based on insufficient evidence, we review *de novo*. *See Dearing*, 504 F.3d at 900. Our review of a jury verdict is "highly deferential. . . ." *Id.* (citation omitted). If any rational trier of fact could find the elements of the crime beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution, that evidence is sufficient to affirm a conviction. *See id.*

A challenge to the constitutionality of a statute is reviewed *de novo. See United States v. Potter*, 630 F.3d 1260, 1260-61 (9th Cir. 2011). We also review *de novo* when a criminal statute is challenged for vagueness. *See United States v. Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011).

## III.   DISCUSSION

### A.   The District Court Committed No Reversible Error in the Formulation of Jury Instructions.

Berry contends that the district court committed reversible error in defining "willfully." Specifically, Berry argues that the district court lowered the *mens rea* standard "by removing the requirement that Mr. Berry must have known that his conduct was unlawful . . ." Citing to *Bryan v. United States*, 524 U.S. 184 (1998) and *United States v. Awad*, 551 F.3d 930 (9th Cir. 2009), Berry asserts that the instructional error was not harmless.

**[1]** The federal statute under which Berry was indicted, provides in pertinent part . . .

> In general [w]hoever—having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person . . . shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both.

42 U.S.C. § 408(a)(5).

Prior to the jury's deliberations, the district court instructed the jury that a defendant acts knowingly if the defendant "is aware of the act and does not act or fail[s] to act through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his acts or omissions were unlawful." The district court further explained that the government had to prove that Berry used the Social Security funds for the use or benefit of someone other than his son DB. Over a defense objection, the district court instructed that "an

act is done willfully if the defendant acted or failed to act knowingly and intentionally and did not act or fail to act through ignorance, mistake, or accident."

**[2]** The United States Supreme Court has recognized that "willfully" is a term of many meanings depending on its context. *Awad*, 551 F.3d at 939. However, in the criminal context, "willfully" usually equates to an act that is "undertaken with a bad purpose. . . ." *Id.* (citation and internal quotation marks omitted). In *Bryan*, 524 U.S. at 192, the Supreme Court combined the "willful" and "knowing" elements, holding that "in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (citation and internal quotation marks omitted). The Supreme Court specified that "willfully" connoted "a culpable state of mind. . . ." *Id.* This definition does not equate to a simple knowing act because it is beyond question that one may act knowingly without having a culpable state of mind. *See United States v Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010); *see also Bryan*, 524 U.S. at 192 n.12 (describing a culpable state of mind variously as "without justifiable excuse" and "without ground for believing [an act] is lawful") (citations omitted). As the defense argued, the instruction given merged the concepts of "knowing" and "willful" without conveying the culpable state of mind that the term "willfully" is designed to invoke in the criminal arena. *See Bryan*, 524 U.S. at 192. The court's failure to properly define "willfully" constituted error. *See Awad*, 551 F.3d at 939-40.

**[3]** Because Berry objected to the instruction given by the district court, we must determine whether the error in failing to adequately define "willfully" was "harmless beyond a reasonable doubt. . . ." *Awad*, 551 F.3d at 939-40. As in *Awad*, once Berry was notified of his obligations as a representative payee, he was aware that using the payments other than for DB's benefit was unlawful. *See id.* at 940. Berry indisputably was informed of his obligations as a representative payee,

through the mailings he received and through the application process. He was undoubtedly aware that he could not convert DB's money to his own use. Therefore, any error in failing to adequately define "willfully" was harmless beyond a reasonable doubt. *See id.*

Our dissenting colleague notes that the work performance of Jerry Fan, the employee who processed Berry's application "did not meet expectations." *Dissenting Opinion*, p.6678. However, Bob Andrews, Fan's supervisor, testified at trial that competency was never an issue with Fan's work. Rather, Fan's productivity and attendance were poor. Indeed, Andrews explicitly confirmed that he had no question regarding the integrity of the data contained in the exhibits completed by Fan from the information provided by Berry.

Deanna Barrios-Terry, a management analyst for the Social Security Administration (SSA), testified that the computer records that were admitted as exhibits in this case contained the same information as the hard copy documents. As in *Awad*, those computer records definitively established that Berry was informed of his obligation to use the funds he received solely for the benefit of his son. She also testified that information regarding the obligations and responsibilities of a representative payee is mailed as part of a routine administrative process.

Andrews added that Berry was counseled over the telephone regarding his responsibilities and obligations as a payee representative. In both the mailing and the personal counseling, Berry was specifically and repeatedly advised that the funds received were to be used solely for the benefit of DB.[2] Payees are expressly instructed how to use the benefits, and

---

[2]The dissent challenges this testimony on the basis that it was gleaned from the agency's computer records. *See Dissenting Opinion*, p.6678 & n.1. However, as discussed below, there was nothing unlawful or inappropriate about reliance on information from the agency's computer records.

are given suggested methods for handling excess funds and lump sum payments. Although Berry argued that the government did not establish he received the mailed information, absent proof to the contrary, the presumption is that the addressee received the mailed documents. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999), *as amended*.[3]

## B. The District Court Acted Within Its Discretion When It Admitted Computer-Generated Records Into Evidence.

Berry asserts that his conviction should be reversed because the district court erroneously admitted computer records from the SSA under Fed. R. Evid. 803(8),[4] the public records exception to the hearsay rule. Berry specifically contends that his rights under the Confrontation Clause were violated because the SSA application is or potentially could be adversarial in nature. Berry cites to this circuit's decision in *United States v. Orellana-Blanco*, 294 F.3d 1143 (9th Cir. 2002) to support this proposition. In sum, Berry argues that the SSA application is the equivalent of a police report. However, Berry's argument is unpersuasive.

---

[3]Although our dissenting colleague objects to our reliance on this presumption, *see Dissenting Opinion*, p.6679, the presumption remains unrebutted.

[4]Rule 803(8) provides: Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

**[4]** "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S.Ct. 2527, 2539-40 (2009). "[W]hen the evidence in question is nontestimonial, confrontation is not necessarily required. . . ." *Marguet-Pillado*, 560 F.3d at 1085 (citation omitted). Documents or records that are not created in anticipation of litigation, but because of "a routine, objective, cataloging of an unambiguous factual matter" are deemed nontestimonial. *Id.* (citation omitted).

Berry's contention is that, similar to the facts in *Orellana-Blanco*, the SSA application contained adversarial language included in anticipation of litigation. However, SSA employees testified that a SSA interviewer completes the application as part of a routine administrative process. In contrast, the form in *Orellana-Blanco* was signed under oath and completed by law enforcement personnel. *See Orellana-Blanco*, 294 F.3d at 1150.

The dissent completely misapplies *Melendez-Diaz*. The focus of the Supreme Court's analysis in *Melendez-Diaz* was whether the "certificates of analysis" that identified the seized substances as cocaine would reasonably be expected by the declarant "to be used prosecutorially . . ." *Melendez-Diaz*, 129 S.Ct. at 2531. The Supreme Court relied on the facts that the certificates were, in essence, affidavits; that the *sole* purpose of these affidavits was to prove the "composition, quality, and the net weight" of the cocaine; and that the declarants "were aware of the affidavits' evidentiary purpose . . ." *Id.* at 2532 (emphasis in the original).

**[5]** In contrast, the documents admitted at Berry's trial were routine, administrative documents prepared by the SSA for each and every request for benefits. No affidavit was exe-

cuted in conjunction with preparation of the documents, and there was no anticipation that the documents would become part of a criminal proceeding. Indeed, every expectation was that Berry would use the funds for their intended purpose. Because this case in no way resembles the facts of *Melendez-Diaz*, the dissent's reliance on that case is misplaced.

The same is true for the more recent decision of *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). In *Bullcoming*, the Supreme Court held that a laboratory report establishing the results of a blood-alcohol analysis was the material equivalent of the certificates of analysis at issue in *Melendez-Diaz*. *See id.* at 2717. The Court summarized the holding in *Melendez-Diaz* as applying to "[a] document created *solely* for an evidentiary purpose . . . made in aid of a police investigation. *Id.* (citation and internal quotation marks omitted) (emphasis added). Because the blood-alcohol laboratory report was generated to assist in a police investigation rather than for routine administrative purposes, it was deemed testimonial. *See id.* The administrative records admitted during Berry's trial fall squarely within the description of business records in *Melendez-Diaz* that are not testimonial. *See Melendez-Diaz*, 129 S.Ct. at 2539-40.

**[6]** The dissent's analysis minimizes the Supreme Court's clarification in *Bullcoming* that a document "ranks as testimonial" under *Melendez-Diaz*, if and only if, the document was "*created solely for an evidentiary purpose*" and "made in aid of police investigation." *Bullcoming*, 131 S. Ct. at 2717 (citation and internal quotation marks omitted) (emphasis added). Notably, the dissent cites no authority to the contrary. No reasonable argument can be made that the agency documents in this case were created *solely* for evidentiary purposes and/or to aid in a police investigation. Indeed, no police investigation even existed when the documents were created. Simply stated, the holdings in *Melendez-Diaz* and *Bullcoming* do not support the dissenting argument. Because the evidence at trial established that the SSA application was part of a routine, adminis-

trative procedure unrelated to a police investigation or litigation, we conclude that the district court did not abuse its discretion by admitting the application under Fed. R. Evid. 803(8), and no constitutional violation occurred.

## C. The Prosecutor's Comments Do Not Warrant Reversal of Berry's Conviction.

Berry contends that his conviction should be reversed because the prosecutor violated his Fifth Amendment right to remain silent. Additionally, Berry asserts that the government impermissibly shifted the burden of proof to him to prove his innocence. Berry's arguments are unpersuasive.

"Establishing . . . prosecutorial misconduct is not in and of itself sufficient to merit reversal of a conviction. . . ." *Blueford*, 312 F.3d at 973. "The trial judge has broad discretion in controlling closing argument, and improprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge. . . ." *Navarro*, 608 F.3d at 535-36 (footnote reference, alteration and internal quotation marks omitted).

**[7]** Although the prosecutor made some improper comments during her closing argument, defense counsel objected to most of the comments. The district court sustained the objections and gave a limiting instruction. Because the district court appropriately controlled the comments and instructed the jury prior to deliberations, no reversible error occurred. *See Navarro*, 608 F.3d at 535-36.

In sum, because no reversible error occurred, the district court acted within its discretion when it denied Berry's motion for a new trial. *See McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 360 (9th Cir. 1996).

**D. The District Court Committed No Error When It Denied Berry's Motion for a Judgment of Acquittal.**

A defendant in a criminal case is entitled to a judgment of acquittal if no rational juror could find the defendant guilty based on the evidence presented. *See United States v. Shetler*, 665 F.3d 1150, 1163 (9th Cir. 2011). All evidence is viewed in the light most favorable to the prosecution. *See id.* Viewing the evidence in the light most favorable to the prosecution, *see id.*, there was sufficient evidence in this case to support the conviction. When evaluating the sufficiency of evidence, we do not attempt to determine whether the trial evidence "established guilt beyond a reasonable doubt," but whether "*any* rational trier of fact could . . . so [believe]." *Dearing*, 504 at 902 (emphasis in the original).

**[8]** Using Berry's electronic application and other records, the prosecution produced evidence that Berry was made aware of his obligation to use the Social Security benefits solely for his son's needs. The prosecution also presented evidence that the benefits were not used for the son's needs, and were never accounted for. From this evidence, viewed in the light most favorable to the prosecution, a rational trier of fact could infer Berry's guilt beyond a reasonable doubt. *See id.* Accordingly, the district court properly denied Berry's motion for a judgment of acquittal. *See Shetler*, 665 F.3d at 1164.

**E. 42 U.S.C. § 408(a)(5) Is Not Unconstitutionally Vague.**

Berry argues that § 408(a)(5) is unconstitutional and vague regarding the retroactive lump sum payment he received. He asserts that he was entitled to reimbursement from the lump sum payment for the period during which he had joint physical and legal custody of DB. Berry's reliance on *Washington State Dep't of Soc. & Health Servs. v. Keffeler*, 537 U.S. 371, 392 (2003) is misplaced. That case contemplates reimbursement for prior expenditures only when the "beneficiary's cur-

rent and reasonably foreseeable needs will be met and reimbursement is in the beneficiary's interest." *Id.* at 382. No such evidence was presented during Berry's trial. More importantly, Berry would have been subject to the exception requiring deposit of the lump sum payment into a "dedicated interest-bearing bank account" if the amount exceeded "six times the monthly benefit." *Id.* at 387 n.9.

**[9]** Berry's reliance on *Skilling v. United States*, 130 S.Ct. 2896 (2010) is similarly unavailing. *Skilling* stands for the unremarkable proposition that a criminal statute must define a criminal offense with sufficient clarity that an ordinary person understands what conduct is proscribed. *See id.* at 2927. There is nothing vague or ambiguous about the statute Berry was charged with violating. Rather, 42 U.S.C. § 405(7)(A) plainly explains that a representative payee, who is not a Federal, State or local government agency, is liable for any misuse of funds received in that capacity. Based on the plain language of the statute, we reject Berry's challenge that § 408(a)(5) is unconstitutional or vague.

## IV.  Summary

Although the district court erred when it instructed the jury regarding the definition of "willfully," the error was harmless beyond a reasonable doubt. Because the SSA application Berry signed was part of a routine administrative process unrelated to litigation, the district court did not abuse its discretion in admitting the computer-generated form into evidence. The district court properly corralled the prosecutor's improper comments and instructed the jury appropriately prior to its deliberations; no reversible error occurred warranting a new trial. There was sufficient evidence for a rational juror to find Berry guilty beyond a reasonable doubt, and the district court committed no error when it denied Berry's motion for a judgment of acquittal. Finally, in view of its plain language, 42 U.S.C. § 408(a)(5) is not vague or uncon-

stitutional.

**AFFIRMED.**

---

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court failed properly to instruct the jury on the meaning of "willful." However, I must dissent from Parts III.A and III.B of the majority opinion because: (1) the evidence presented at trial makes clear that the erroneous jury instruction was not harmless beyond a reasonable doubt; and (2) the introduction of Government Exhibits 5 and 6 violated Berry's Confrontation Clause rights and was also not harmless beyond a reasonable doubt. For each of these reasons, I would reverse and remand for a new trial.

**I**

I agree with the majority that the jury instructions merged the definition of "willful" into the definition of "knowing," and, thus, misstated the law by reading the requirement of willfulness out of the statute. *See* Maj. Op. at 6668-69. The question on which I part company with the majority is whether this error was harmless. "If a jury instruction misstates an element of a statutory crime, the error is harmless only if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *United States v. Awad*, 551 F.3d 930, 938 (9th Cir. 2009) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). The majority concludes that the jury instruction misstated an element of the offense but, relying on *Awad*, deems this error harmless beyond a reasonable doubt. I respectfully disagree.

I agree that it is *possible* that the jury could have convicted Berry had it been properly instructed on the meaning of "will-

ful." But that possibility does not satisfy the requirement that an error of constitutional dimension be harmless beyond a reasonable doubt. "A reviewing court making this harmless-error inquiry does not . . . 'become in effect a second jury to determine whether the defendant is guilty.' Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19 (citation omitted). Here, the record contains ample evidence that could have rationally led to a contrary finding if the jury had been properly instructed.

The majority concludes that "once Berry was notified of his obligations as a representative payee, he was aware that using the payments other than for D.B.'s benefit was unlawful." Maj. Op. at 6669. But the evidence that Berry acted "willfully" — that he knew he was breaking the law — is weak. There is no direct evidence that Berry was ever notified of his obligations as representative payee. The main evidence of Berry's notification of his obligations is found in Government Exhibits 5 and 6.[1] These exhibits, prepared by Social Security Administration ("SSA") employee Jerry Fan, are computer records of Berry's applications to be a representative payee and for D.B.'s insurance benefits. Each summarizes conversations that Fan purportedly had with Berry. The exhibits suggest that Fan mentioned the responsibilities to Berry. But Fan did not testify at trial. A few months after Fan interviewed Berry, Fan resigned in anticipation of being terminated because his work performance did not meet expectations. The computer records are unsigned, and the SSA lost Berry's application file. Bob Andrews, Fan's supervisor, testified that he had not seen Berry's signature on his applications.

The majority notes that Andrews testified "that Berry was

---

[1]These exhibits are the "computer records" that the majority asserts "definitively established that Berry was informed of his obligation to use the funds he received solely for the benefit of his son." Maj. Op. at 6670.

counseled over the telephone regarding his responsibilities and obligations as a payee representative." Maj. Op. at 6670. In fact, Andrews testified that he had no personal knowledge as to whether Berry actually was counseled regarding his obligations.[2] Andrews testified that he did not have personal knowledge as to whether Fan asked Berry if Berry understood his obligations as a representative payee, or whether Fan told Berry how he had to spend or save the money.

The majority also points out that Deanna Barrios-Terry, a management analyst for the SSA, "testified that information regarding the obligations and responsibilities of a representative payee is mailed as part of a routine administrative process." Maj. Op. at 6670. Barrios-Terry testified that this mailing consisted of three pamphlets, entitled "The Guide for the Representative Payees," "What You Need to Know When You Get Retirement or Survivor's Benefits," and "Your Right to Question the Decision Made on Your Claim." There was no evidence presented that Berry in fact read and understood these pamphlets. The majority relies on the presumption in civil cases that an addressee received mailed documents. *Mahon v. Credit Bureau of Placer Cnty., Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999). This is too thin a reed to establish that the lack of a willfulness instruction was harmless beyond a reasonable doubt.

In contrast, *Awad* found the willful instruction error harmless because there was direct evidence that Awad knew that

---

[2]As I explain below, statements made by Fan in the interview notes indicate that Fan informed Berry about his responsibilities and obligations, but because Fan did not testify at trial, the introduction of these statements violated Berry's confrontation rights. Regardless, Fan's supervisor's testimony that he had no direct knowledge of what Fan in fact informed Berry raises at least a reasonable probability the jury may have found that Berry did not act willfully, had it been properly instructed. The jury may have found that the government failed to carry its heavy burden that Berry acted willfully even if it concluded that Fan was a generally competent employee.

his conduct was unlawful. Awad submitted signed certifications with each fraudulent claims form acknowledging that he understood submitting false or misleading Medicare claims could lead to criminal punishment. 551 F.3d at 940. There is no such evidence here.

There was no evidence of obvious lawbreaking before the jury. Insofar as the record shows, all but a couple hundred dollars of the benefits money transferred by Berry to various accounts still remains there today. Although this may amount to bad accounting practice for a trustee, there is no evidence that the money was misspent for a purpose other than for the benefit of D.B., Berry's minor son. In comparison, Awad charged for services he never rendered — including submitting claims for services supposedly rendered on dates when the doctor was out of the country, and went from struggling financially to turning a multi-million dollar profit in just three years. *Id.* at 935, 941. Thus, in *Awad* the district court's jury instruction on willfulness, although erroneous, was harmless beyond a reasonable doubt because Awad's scheme was "so bold and simple that no reasonable person could have thought it lawful." *Id.* at 941.

Finally, the most important reason that *Awad* found the instruction error harmless is absent in this case. In *Awad*, the jury had to find that Awad "inten[ded] to deceive or cheat" in order to find him guilty. *Id.* at 940. In addition, "the jury was instructed that a good faith belief that the acts were lawful was a complete defense 'because good faith on the part of the defendant is, simply, inconsistent with a finding of an intent to defraud.' " *Id.* at 940-41. Given these instructions, "[n]o reasonable jury could have found that a physician intended to deceive or cheat the Federal Government but did not know that such conduct is unlawful, especially in light of the warnings on the claim forms." *Id.* at 940.

That critical element in *Awad* is missing here. Here, the district court did not give any other instruction informing the

jury that it had to assign a bad purpose to Berry's actions in order to convict. According to the jury instructions, the jury needed to find that Berry "made an application to receive a Social Security benefit" for D.B., that he "received such a benefit payment," that he "converted the benefit payment, or any part thereof, to a use other than for the use and benefit" of D.B., and that he did so "knowingly and willfully," which was defined as "aware of the act" but not necessarily knowing "that his acts or omissions were unlawful." Unlike in *Awad*, the jury made no other finding from which we can conclude that, despite the erroneous instruction, the jury must have concluded that Berry acted willfully in order to find him guilty.

It is not clear beyond a reasonable doubt that a rational jury would have found Berry guilty absent the erroneous instruction given the sketchiness of the evidence presented at trial. If the jury was instructed that to convict, it had to find Berry acted with the knowledge that his conduct was unlawful, they reasonably could have returned a not guilty verdict given the evidence in the record. For this reason alone, I would reverse and remand for a new trial.

## II

I also dissent from the majority's holding that the introduction of Government Exhibits 5 and 6 did not violate Berry's rights under the Confrontation Clause. Testimonial evidence made by an available declarant may not be introduced against a criminal defendant unless the defendant has the opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Because portions of Exhibits 5 and 6 that were introduced against Berry are testimonial, their introduction against Berry violated his Confrontation Clause rights. And because their introduction was not harmless, I would also reverse and remand for this failure alone.

In this case, we confront a factual scenario not previously addressed by the Supreme Court. The exhibits in this case are

hybrid public records: parts were created for the administration of the SSA's affairs, but other parts were created for the purpose of establishing or proving a fact at trial. As explained above, Government Exhibits 5 and 6 are computerized records of Berry's applications and summarize conversations that Fan purportedly had with Berry. Exhibit 5 states "I know that anyone who makes or causes to be made a false statement or representation of material fact relating to a payment under the Social Security Act commits a crime punishable under Federal law." Exhibit 6 contains similar language. Exhibit 5 also states "I . . . [m]ay be punished under Federal law by fine, imprisonment, or both if I . . . am . . found guilty of misuse Social Security or SSI benefits." Exhibit 6 also states "I WILL BE HELD PERSONALLY LIABLE FOR REPAYMENT OF BENEFITS I RECEIVE IF THEY ARE NOT SPENT OR SAVED FOR THE CHILD." Each was prepared by Fan, and neither was signed by Berry.

Fan did not testify at Berry's trial. Instead, these exhibits were introduced with the testimony of Deanna Barrios-Terry, who testified about general record-keeping procedures at the SSA. Robert Andrews, Fan's supervisor, also testified about these exhibits. Andrews testified that he did not have personal knowledge as to whether Fan explained to Berry his obligations as a representative payee.

The majority explains that "[d]ocuments or records that are not created in anticipation of litigation, but because of 'a routine, objective, cataloging of an unambiguous factual matter' are deemed nontestimonial." Maj. Op. at 6672 (quoting *United States v. Marguet-Pillado*, 560 F.3d 1078, 1085 (9th Cir. 2009) (in turn, quoting *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1075 (9th Cir. 2005)). But this court has already acknowledged that "post-*Melendez-Diaz*, neither [the evidence]'s routine, objective nature nor its status as an official record necessarily immunizes it from confrontation." *United States v. Orozco-Acosta*, 607 F.3d 1156, 1163 (9th Cir. 2010).

The majority also contrasts the "form in *Orellana-Blanco*" which "was signed under oath" with the exhibits at issue here, noting that here "[n]o affidavit was executed in conjunction with preparation of the documents." Maj. Op. at 6672-73. This is not a relevant distinction. In *Bullcoming v. New Mexico*, the Supreme Court reiterated that it would be " 'implausible' " to read the Confrontation Clause to "render inadmissible only sworn *ex parte* affidavits, while leaving admission of formal, but unsworn affidavits 'perfectly OK.' " 131 S. Ct. 2705, 2717 (2011) (quoting *Crawford*, 541 U.S. at 52-53 n.3). The Court explained that this construction "would make the right to confrontation easily erasable." *Id.*

The Supreme Court has explained that the central question in determining whether a business or public record is testimonial is whether it was "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 (2009).[3] While the entirety of Exhibits 5 and 6 may not have been "made for the purpose of establishing or proving some fact at trial,' " *Melendez-Diaz*, 557 U.S. at 329, the inclusion of the statements quoted above surely was. Here, the "fact in question" is whether Berry was aware of the law. It is hard to imagine what purpose including these statements in these documents could serve aside from establishing an

---

[3]The majority asserts that the Supreme Court "clarifi[ed] in *Bullcoming* that a document 'ranks as testimonial' under *Melendez-Diaz*, if and only if, the document was '*created solely for an evidentiary purpose*' and 'made in aid of police investigation.' " Maj. Op. at 6673-74 (quoting *Bullcoming*, 131 S. Ct. at 2717) (emphasis added by majority). *Bullcoming* does note that *Melendez-Diaz* held that a document is testimonial if it was created solely for an evidentiary purpose and in aid of a police investigation. *Bullcoming*, 131 S. Ct. at 2717. But nowhere in *Bullcoming* does the Court state or imply that these are the *only* and necessary conditions under which a document is testimonial or that a document is not testimonial if both conditions are not satisfied. *See also Melendez-Diaz*, 557 U.S. at 324 ("But the paradigmatic case identifies the core of the right to confrontation, not its limits.").

applicant's knowledge of the law for a future showing of willful violation. Thus, these statements were included "solely for an evidentiary purpose," *Bullcoming*, 131 S. Ct. at 2717 (internal quotation marks omitted), and are "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.' " *Melendez-Diaz*, 557 U.S. at 321 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)).

In *Bullcoming*, the Supreme Court's most recent foray into the Confrontation Clause, the Court explained that "surrogate testimony of the kind [the declarant's supervisor] was equipped to give could not convey what [the declarant] knew or observed about the events his certification concerned . . . [n]or could such surrogate testimony expose any lapses or lies on the [declarant]'s part." 131 S. Ct. at 2715. This is precisely the concern here. Fan's supervisor testified about general procedures for informing applicants of their rights, but admitted that he had no personal knowledge of what Fan told Berry. This left Berry unable to cross-examine anyone as to what the interviewer/recorder "knew or observed about the events" in the interview and unable to "expose any lapses or lies." *Id.* In these circumstances, in the face of a Confrontation Clause objection, the only way to protect a defendant's Confrontation Clause rights is, at least, to redact the testimonial portion of the challenged exhibit before admitting it into evidence.

When evidence is introduced in violation of a defendant's confrontation right, "we must remand for a new trial unless the government demonstrates beyond a reasonable doubt that admission of the evidence was harmless." *United States v. Orozco-Acotsa*, 607 F.3d 1156, 1161 (9th Cir. 2010) (quoting *United States v. Norwood*, 603 F.3d 1063, 1068 (9th Cir. 2010)). The error here was not harmless beyond a reasonable doubt because the testimonial evidence in Exhibits 5 and 6 is the key evidence underlying the majority's conclusion that the concededly erroneous "willful" instruction was harmless beyond a reasonable doubt. *See* Maj. Op. at 6669 (noting that

Fan's supervisor testified that "Berry was counseled over the telephone regarding his responsibilities and obligations as a payee representative"). Because the introduction of this evidence violated Berry's rights under the Confrontation Clause, I would reverse and remand for a new trial on this ground as well.

I respectfully dissent.